Shippen, President.
 

 On the hearing of this motion, the plaintiffs were called upon to show their cause of action : they show that on the 17th of September 1783, a certain cause, wherein Elisha Doane was claimant and appellant, against the brigantine Susannah and her cargo, and John Pen-hallow and others, libellants and appellees, was tried in the court of appeals in cases of capture, established by congress, in the city of Philadelphia. And that it was there finally adjudged and decreed by the said court of appeals, that the sentence or decree, given by the inferior and superior courts of judicature in the state of New Hampshire, in the said cause, should be revoked and annulled, and the property specified in the said claim, should be restored to the claimant. The plaintiffs further show, by depositions, that notwithstanding this final decree of reversal, the defendants, although requested, had refused, and still refuse, to restore the property specified in the claim of the said Elisha Doane (the said defendants being owners and agents of the privateer McClary which captured the said brigantine Susannah and her cargo), but had converted and disposed of the same to their own use. Upon this ground, the action is brought, to recover the value of *2191 saacl an^ cargo, against the defendants. Two other actions -1 are brought by Isaiah Doane and James Shepherd against the same defendants, for the same cause.
 

 The motion to dissolve these attachments is founded on a rule and prac
 
 *231
 
 tice of this court, that in cases of foreign attachment, they will examine into the plaintiff’s cause of action, and if they find it not to be such as would entitle him to hold the defendants to special bail, they will dissolve the attachment. This rule was founded on the mischiefs which were found to arise from groundless attachments of the ships and property of persons not inhabitants or resident within this state, and is conformable to the spirit of the attachment law.
 

 The counsel for the defendants, in order to show that there are not sufficient grounds to hold the defendants to bail, have produced evidence of an original condemnation of the brig and her cargo as lawful prize, in the maritime court of New Hampshire, on the 16th day of December 1777, agreeable to an act of assembly of that state ; and also a similar condemnation in the superior court of judicature of that state, on an appeal from that maritime court, with an order for sale and distribution of the property among the captors, and an actual sale and distribution accordingly. And they urge, that the subsequent reversal of those sentences, five or six years afterwards, by the commissioners of congress appointed for hearing appeals in cases of prize, is null and void, and insufficient to revest the property in the claimants, congress having had no power, before the articles of confederation, to receive appeals in case of prize. They also urge, that a prior action has been brought by the present plaintiffs against the defendants, in the state of Massachusetts, for the same cause ; and that on the trial of that action, the judges there determined, that the decree of reversal should not be given in evidence to the jury ; and that the plaintiffs, in order to avoid a verdict against them, had prayed and obtained leave to discontinue that action. And that, therefore, the present action is vexatious, and the defendants should not be held to bail.
 

 A third reason is also urged by the defendants’ counsel, that this being originally a cause prize, it is exclusively of admiralty jurisdiction ; and that no action will lie at common law, either for the original taking, or any of the consequences.
 

 The court have heard, and deliberately considered, the several arguments on these points, delivered by learned counsel on both sides.
 

 The first point involves in it the sovereign rights of the separate states on the one hand, and the supreme power of the Hnited States in congress assembled, on the other ; and is, indeed, a momentous question ; which, however, we shall show in the decision of the third point, to be unnecessary, and perhaps, improper for us to decide upon.
 

 On the second point, it is proper to declare, that we think ourselves .indispensably bound to give full faith and credit to the legal acts of our sister states ; and that the judgments given in their *courts will have their r*ooo full effect here. But it is not every discontinuance that will disable a L plaintiff to hold a defendant to bail in a second action
 
 ;
 

 (a)
 

 that
 
 will depend upon the circumstances of vexation attending the case ; which we, likewise, think it unnecessary to discuss, in the present case, as we are clear and unanimous on the last point.
 

 The whole learning upon this subject is collected together and drawn to a
 
 *232
 
 point, in the famous case of
 
 Le Caux
 
 v.
 
 Eden,
 
 reported in Douglas 572. By this ease, and the cases cited by the judges in support of their opinion, it appears cleaily : 1st. That the question of prize or no prize, is solely and exclusively of admiralty jurisdiction, and not triable at common law. 2d. That not only the original taking, but all the consequences are solely appropriated to the admiralty. 3d. That although there may have been a definitive sentence of acquittal in the admiralty, and that sentence conclusive on the question, yet for any matter happening consequential to the taking as prize, no suit will lie at common law; and that in all those consequential cases, notwithstanding the sentence of acquittal, the question of prize or on prize must still arise, and the sentence is evidence of a thing which the common law cannot inquire into.
 

 The application of these cases to the cause before us is evident and obvious. The original taking of the Susannah, and her cargo was by a commissioned privateer, as prize ; the carrying her into port, the procuring her condemnation in the maritime court of New Hampshire, and the sale and distribution by order of that court, were all consequences of this taking as prize. And notwithstanding the sentence of reversal and acquittal, the question of prize or no prize will still occur.
 

 The answer given by the plaintiff’s counsel to the cases cited in Douglas, is, that in all those cases, the facts on which the actions were founded, happened previous to the decision of the question of prize ; but that in these actions, the facts which support them occurred after the final sentence of acquittal, when the cause was at rest, and it was no longer necessary to examine the question of prize ; which facts were, that after the final sentence of reversal, the defendants were requested and refused to restore the property agreeable to the sentence, and converted it to their own use, which is the ground of the action. The distinction itself does not appear, from the cases, to be well founded, as it is not the time when the facts happened, but the connection they have with the original capture, and their being the necessary consequences of the capture, that gives the exclusive jurisdiction to the admiralty. In the case of
 
 Radley
 
 v.
 
 Egglesfield,
 
 in 2 Lev. 25, there had been a previous condemnation of the ship and goods as prize, in Scotland, and two subsequent sales on land, one in Scotland and the other in England-: under which last sale, one of the parties claimed ; yet the court say, that this does not alter the case, being matters consequential upon the original taking, *2211 *an<^ dependent upon it. And it is observable, that in this very case, J as it is reported in 2 Saund. 259, the court say that the validity of the sentence in the admiralty court in Scotland was determinable by the law of the admiralty of England, and not by the common law. If, however, the distinction made by the plaintiff’s counsel was even admitted to be well founded, do the facts on which these actions must be supported, appear to be subsequent to the final acquittal ? It is true, there was a demand and refusal, subsequent to that decree, but a demand and refusal is only evidence of a conversion, and not the conversion itself. Are we to shut our eyes against the other evidence, and not see when the conversion was made ? It appears to have originated on the taking the vessel as prize on the high seas, and it was completed, on the sale and distribution of the money, in pursuance of the decree of the superior court of New Hampshire, in consequence of the taking as prize — all this, long before the reversal of the decree.
 

 
 *233
 
 What is this, then, but an action to enforce by our authority the decree of the court of appeals ? Are we authorized to enforce that decree ? Is there any case whatever, which shows that an action will lie at common law, to carry into execution the decree of a prize court of admiralty? The jurisdictions of the two courts are entirely separate, and they judge by different laws. It is true, that in some cases, the courts of common law and the instance court of admiralty have concurrent jurisdiction, as in suits for seamen’s wages ; hut in no case whatever, have the prize courts of admiralty and the common-law courts a concurrent jurisdiction.
 

 I have said before, that the question of prize would still occur in this action ; the ultimate fact disputed is, whether the vessel and cargo were prize or not; the evidence to support or contradict this fact arises, on one side, from the sentences of the maritime courts of New Hampshire; on the other, from the sentence of the court of appeals of congress. The validity of the latter sentence is disputed ; if we say it is valid, we, in effect, say she is no prize, if otherwise, we say she was a prize. We have clearly no authority to say either one or the other. By the case in Saunders, we cannot determine upon the validity of the sentence itself ; and if we could, yet it is, as Justice Buller observes in Douglas, evidence of a thing which a common law court has no right to inquire into.
 

 Ujion the whole, therefore, as the question to be tried in this action, if not directly a question of prize, is yet a question arising upon the immediate and necessary consequences of the vessel’s being taken as prize, which is solely and exclusively of admiralty jurisdiction ; and as it is an action to carry into execution the sentence of the court of appeals, which we have no authority to do (that being the proper judicature to carry into effect its own sentences), we think, the present action will not lie, and adjudge that the attachments be dissolved,
 
 (a)
 

 (a)
 

 See Clark
 
 v.
 
 Weldo,
 
 4
 
 Yeates 206; Field
 
 v.
 
 Colerick, 3 Id. 56; Parasset
 
 v.
 
 Gautier, 2 Dall. 330.
 

 (a)
 

 In a case decided previously to the revolution (Taxier v. Sweet, 2 Dall. 81), it was held, that the court had jurisdiction of an action to recover the value of a vessel taker as prize by the defendant, and ordered to be restored by the commissioners of appeals in prize causes. But see Henderson v. Clarkson, 2 Dall. 174; Cheriot v. Foussat, 3 Binn. 220; Bingham v. Cabot, 3 Dall. 19. The case of Penhallow v. Doane, in the supreme court of the United States, 3 Dall. 54, settled the contested question of the jurisdiction of the federal courts of appeal.