## WILLIAM BRAITHWAITE *vs.* W. B. JORDAN.

Opinion filed October 28th, 1895.

### Action Upon Appeal Bond in Admiralty—Jurisdiction of State Court.

A libel in a possessory action in *rem* was filed in the District Court of the Territory of Dakota, sitting as a court of admiralty. The plaintiff herein defended the action as claimant of the vessel, and was successful. On appeal by the libelants to the Territorial Supreme Court, the undertaking sued on was given to secure a stay of proceedings. The judgment of the District Court being affirmed, plaintiff, who was respondent on the appeal, brought suit on such undertaking. *Held*, that the action was not an integral part of the original admiralty case, and that, therefore, the Federal District Court for the district of North Dakota, as the successor in admiralty cases of the Territorial District Court, did not have exclusive jurisdiction of the proceedings to enforce such undertaking, although the plaintiff might have secured in that court, in the very action in which the undertaking was given, a summary judgment against the persons who signed such undertaking,—the defendants herein,—but that an action on such undertaking would lie in the District Court of this state.

### Action Not One to Enforce Judgment.

Also, *held*, that this action on the undertaking is not a proceeding to enforce the judgment in the admiralty case, within the meaning of the rule that the court, whether state or federal in which a judgment is rendered, has exclusive jurisdiction to enforce it.

### Concurrent Jurisdiction—Jury Trial.

Also, *held*, that no principle of comity requires the state courts to refuse to take cognizance of the case. It is no objection to the jurisdiction of the court in entertaining a common-law action of debt that the plaintiff has in another tribunal a remedy more speedy and simple in is character, and equally effica cious. Especially should this be the doctrine were to compel him to resort to the summary remedy would deprive him of the right to a trial by jury.

### Undertaking was a Valid Common-law Obligation.

The judgment from which the appeal was taken merely adjudged that the claimant was entitled to possession, and ordered the marshal, who was legally in custody of the property, to deliver it to him. *Held* (by Corliss, J.), that this was not a judgment directing the delivery of personal property, within the meaning of section 416 of the Code of Civil Procedure, under revision of 1877 (Comp. Laws, § 5221), assuming such statute to be applicable to admiralty cases, and that, therefore, on this assumption, the appellants could have secured a stay of proceedings on the giving of a mere cost bond. Code Civ. Proc. § 422, Revision 1877. The undertaking, therefore, so far as it was more than a mere cost undertaking, was without consideration, and void as a statutory undertaking. But the majority of the court thought that the undertaking would be

valid, even under the statute. But, *held*, that the practice on appeal in the admiralty case to the Territorial Supreme Court was not regulated by the territorial statutes, but by the rules and usages of courts of admiralty, and that as the appellants had no absolute right, under such rules and usages, to perfect an appeal to the Territorial Supreme Court, and secure a stay of execution pending such appeal, on the giving of a mere cost bond, and as the respondent in the appeal did in fact treat the undertaking as entitling the appellants to a stay, by abstaining pending the appeal from all attempts to enforce the judgment in his favor, *held*, further, that the undertaking was valid as a common-law obligation supported by a sufficient consideration.

## Waiver of Statutory Requirement in Bond.

It is no defense to an action on a statutory undertaking on appeal that the court has not fixed the amount thereof under the statute. Such provision is for the benefit of the respondent, and if he waive it, and treat the undertaking as sufficient to accomplish the purpose for which it was given, the undertaking may be enforced by him, the same as if the statute had been complied with.

## Stipulation for Value—Voluntary Bond.

The vessel at the time the appeal was taken was in actual possession of the appellants, and this appeared from the record in the case. The bond recited that the judgment was against them for delivery of possession to claimant. It was for $15.000. Having been given to secure a stay of proceedings under these circumstances, it was necessarily given to enable the appellants to retain possession pending the appeal. Therefore, *held*, that it was in the nature of a stipulation for value, and claimant having, in reliance thereon, actually refrained from disturbing the appellants in their possession of the vessel pending the appeal, the instrument was valid as a voluntary bond.

## Stipulation for Value in Possessory Action Enforced in Any Court.

Unlike stipulations for value in other cases, a stipulation for value in a possessory action can be enforced in any court having jurisdiction of an action of debt, for the amount due on the stipulation.

Appeal from District Court, Burleigh County; *Winchester*, J.

Action by William Braithwaite against W. B. Jordan and others on an appeal bond. From a judgment sustaining a demurrer to the complaint, plaintiff appeals.

Reversed.

*G. W. Newton*, for appellant.

Courts of admiralty exercise a dual jurisdiction (a) as instance courts, (b) as prize courts. 3 Blackst. Com. 108, n. 14; *Percival* v. *Hickey*, 18 Johns. 257; *Doanes Adm.* v. *Penhallow* 1 Dall. 218. As instance courts they are governed by one system of laws, and

as prize courts by another system. 3 Blackst. Com. 108. The instance court is governed by the civil law, the laws of Oleron and the customs of admiralty modified by statute. As an instance court the admiralty and the common law courts have exercised concurrent jurisdiction, whereas the admiralty as a prize court, has maintained exclusive jurisdiction of matters of prize. *Henderson* v. *Clarkson*, 2 Dall. 174; *Slocum* v. *Mayberry*, 2 Wheat. 1; *Novian* v. *Hallett*, 16 Johns. 327; *Doane* v. *Penhallow*, 1 Dall. 218; *Ross* v. *Rittenhouse*, 2 Dall. 160; *Sasportas* v. *Jennings*, 1 Bay. 470; *Finlay* v. *The Ship William*, 1 Pet. Adm. 12; *Montgomery* v. *Jecker*, 13 How. 498; *U. S.* v. *Weed*, 5 Wall. 62; *Rose* v. *Himely*, 2 Wheat. App. 41.

The case at bar is not affected by decisions in cases of prize or by the rule of exclusive jurisdiction in the admiralty is such cases, for the reason that *Rea* v. *The Eclipse* was not within the admiralty jurisdiction as a prize court, but upon the instance side of the admiralty.

The common-law courts have jurisdiction of all causes cognizable upon the instance side of the admiralty court, except where the proceeding is *in rem* to enforce a maritime lien. *The Belfast,* 7 Wall. 624; *The Moses Taylor,* 4 Wall. 411. There is nothing in the admiralty rules that effects the appeal from the Territorial District Court to the Supreme Court of the Territory taken in the "Eclipse" case. The organic law §§ 1865, 1869, 1909 and 1910 vested the Territorial District Courts with jurisdiction of cases arising under the constitution and laws of the United States. *Steamer City of Panama* v. *Phelps,* 25 L. Ed. 1061, 11 Otto 453. By the enactment of § 1910 the District Courts of the territory were not made Circuit and District Courts of the United States. They are courts of the territory invested for some purposes with the powers of the courts of the United States. *Reynolds* v. *United States,* 8 Otto 145 (25 L. Ed. 244); *United States* v. *Beebe,* 2 Dak. 292, 11 N. W. Rep. 505. There was a judgment in the District Court as to the ownership and right of possession of the boat in question. The defeated parties sought a review of that judgment

by appeal to the Territorial Supreme Court, as provided by the territorial statute. They put up the undertaking required by § § 414 and 416 Code of Civil Pro. and in one instrument § 420 Code Civil Pro. This was not an admiralty bond, admiralty recognizance, or admiralty stipulation. It was an undertaking on appeal from the Territorial District Court in an action wherein it was attempting to exercise jurisdiction under the constitution and laws of the United States. It is admitted that under § 22 of the enabling act the case of *Rea* v. *The Eclipse* was properly remanded by the United States Supreme Court to the District Court of the United States for the district of North Dakota, and that that court properly entered up judgment as directed by the mandate against the libellants and their stipulators (for costs) and the intervenors and their stipulators (for costs). *Binney* v. *Porter*, 9 How. 235; *Forsyth* v. *United States*, 9 How. 571; *McNulty* v. *Batty*, 10 How. 72. But such fact does not change the rights of the parties to the undertaking in question. The relation of the parties is contractual and were fixed and vested before the enabling act was passed. The territorial statute under which the undertaking was given, neither the undertaking itself vests appellant or the court with the privilege or power of entering up summary judgment against the respondents. Stipulations for costs are enforced summarily, stipulations for value will stand in the place of the *res*. When a stipulation is taken in an admiralty suit for the property subject to legal process and condemnation, the stipulation is deemed a mere substitute for the thing itself and the stipulators liable to all those authorities on the part of the court, which it could properly exercise if the thing itself were still in its custody. *The Palmyra*, 12 Wheat. 1. *Bartlett* v. *Spicer*, 75 N. Y. 528; *The Schooner Ann Caroline* v. *Willis*, 2 Wall. 538; *The W. H. Webb* v. *Barling*, 14 Wall. 406. Summary judgment by motion is never deemed an exclusive remedy. It is cumulative. 1 Enc. Pl. and Pr. 1018. The case at bar is entirely distinct from the judgment in *Rea* v. *The Eclipse*. At the best that judgment is a mere incident. A purely personal contract

without relation to any maritime service is not within the admiralty jurisdiction. *The Virginia*, 2 Paine, 115. The damages recoverable have nothing essentially maritime in their composition. *The Paola*, 32 Fed. Rep. 174. The undertaking in question did not take the place of the Eclipse. It is not a stipulation for value in admiralty to stand in the place of the *res* or any part or interest in it. *Hagan* v. *Lucas*, 10 Pet. 400; *Bartlett* v. *Spicer*, 75 N. Y. 528; *Ramsey* v. *Allegre*, 1 Wheat. 611; *Fox* v. *Patton*, 22 Fed. Rep. 746. And the state court has concurrent jurisdiction of a suit upon it. Hawes Jurisdiction of Courts § 47. *Myers* v. *Isaacs*, 35 La. Ann. 221, 30 L. Ed. 642; *Lacaze* v. *Penn.* 1 Addison 58.

*Edgar W. Camp*, for respondent.

Admiralty courts have jurisdiction to enforce bonds given therein. *The Baltic*, Fed. cases No. 826; *The Wanata*, 5 Otto 600; *The Allegator*, Fed. cases No. 248; *Nelson* v. *U. S.*, Fed. cases No. 10,116. Bonds are, to all intents and purposes, stipulations in the admiralty. Dunlap's Prac. 164. *McLellan* v. *U. S.* Fed. cases No. 8895. It matters not whether security in admiralty and maritime causes be a bond, recognizance or stipulation as the court has inherent authority to take it, and to proceed to award judgment or decree thereon according to the course of the admiralty, unless where some statute has prescribed a different course. *The Octavia*, Fed. cases No. 10,423; Conkling' Adm. 2nd Ed. 105; *Holmes* v. *Dodge*, Fed. cases, No. 6637; *Gaines* v. *Travis*, Fed. cases No. 5180; Ben. Adm. 2nd Ed. 290; *In Re Sawyer*, 21 Wallace 235; *The Sydney*, 47 Fed. Rep. 260. No discrimination is made between appeal bonds and other stipulations in admiralty. 2 Brown's Civ. and Adm. Law 407, 429, 440; *The Elmira*, 16 Fed. Rep. 138; *Bartlett* v *Spicer*, 75 N. Y. 528; *Campbell* v. *Hadley*, Fed. cases No. 2358; *The Deleware*, Fed. cases No. 3762; *The Oregon*, 15 Sup. Ct. Rep. 860, 3 Blackstone 108. A stipulation or bond in admiralty is regarded as a fund in court to be distributed by that court. *The Tolchester*, 42 Fed. Rep. 180; *Pearce* v. *Ins. Co.*, 96 U. S. 461. Admiralty having jurisdiction of

the main case, has jurisdiction of all incidental and ancillary pro-
ceedings. 2 Brown 107, *DeLovio* v. *Boit*, Fed. cases No. 3776,
*Dean* v. *Angus*, Fed. cases No. 3702; *Munks* v. *Jackson*, 66 Fed.
Rep. 571; *Campbell* v. *Hadley*, Fed. cases No. 2358; *Jackson* v.
*Munks*, 58 Fed. Rep. 596. In admiralty proceedings stipulations
and bonds are treated as ancillary and subsidiary to the main case.
*The Eclipse,* 135 U. S. 599; *Ramsey* v. *Allegre*, 12 Wheat. 611-630;
2 Browne 142-433 and 541. A suit upon an appeal bond in equity
is not an original suit but is an off-shoot or out-branch of the suit
in which the bond was given and jurisdiction of that suit gives
jurisdiction of the subject matter of this suit. *Seymour* v. *P. and
C. Con. Co.*, Fed. cases No. 12,689; *Arnold* v. *Frost*, Fed. cases No.
558; *Hatch* v. *Dorr*, Fed. cases No. 6206; *Lamb* v. *Ewing*, 54 Fed.
Rep. 269. The jurisdiction of a court is not exhausted by the
rendition of a judgment but continues until that judgment is sat-
isfied, process subsequent to judgment is as essential to jurisdic-
tion as process antecedent to judgment. *Rio Grande* v. *Vinet*, 132
U. S. 478; *Thompson* v. *McReynolds*, 29 Fed. Rep. 657. Debt on
recognizance of bail is a continuation of the original suit, because
as a general rule the action must be brought in the same court.
*Davis* v. *Packard*, 7 Pet. 276; *McDermott* v. *Doyle*, 11 Mo. 443; *Bur-
tus* v. *McCarty*, 13 Johns. 424; *Davis* v. *Packard*, 6 Wend. 327; *P. P.
C. Co.* v. *Washburn*, 66 Fed. Rep. 790. Where the Federal Court
had sole jurisdiction of the principal matter it should have also of
the subsidiary. *Bartlett* v. *Spicer*, 75 N. Y. 528. The state court
has no jurisdiction of this cause. *Penhollow* v. *Doane*, 3 Dallas,
54; *Jennings* v. *Carson*, 4 Cranch. 2; *The Blanche Page*, Fed. cases
No. 1524; *Ex parte Philips*, 25 L. Ed. 781.

CORLISS, J. Although the steamer Eclipse has for years lain at
the bottom of the Missouri river, the litigation connected with
her shows no signs of decadence. 4 Dak. 218, 30 N. W. 159; on
appeal, 135 U. S. 599, 10 Sup. Ct. 873; 1 N. D. 455, 48 N. W. 354;
1 N. D. 475, 48 N. W. 361; 2 N. D. 57, 49 N. W. 419; 3 N. D. 365,
56 N. W. 133. In this case Capt. Braithwaite is seeking to re-
cover damages for breach of an undertaking given by defendants

on appeal from the District Court to the Supreme Court of the Territory of Dakota, from a judgment rendered in a proceeding in admiralty instituted to try his title to, and right to the possession of, this vessel. The questions of law on the merits which are here at issue arise on demurrer to the plaintiff's complaint. The trial court sustained the demurrer. The plaintiff has appealed. It is obvious from the complaint that the undertaking was given as a cost bond, and also for the purpose of securing a stay of proceedings under the judgment appealed from pending the appeal. It is in the following form: "Whereas, on the 18th day of September, 1884, in the District Court within and for the Third Judicial District, the above named respondent, William Braithwaite, recovered judgment against the above named appellants for the possession of said steamer Eclipse and costs, and the above named appellants and interveners, feeling aggrieved thereby, intend to appeal therefrom to the Supreme Court of the Territory of Dakota: Now, therefore, we do hereby undertake that the said appellants will pay all costs and damages which may be awarded against appellants on said appeal, or on a dismissal thereof, not exceeding two hundred and fifty dollars, and do also undertake that if said judgment so appealed from, or any part thereof, be affirmed, or said appeal be dismissed, the said appellants will pay the amount directed to be paid by said judgment, or the part of such amount as to which the said judgment shall be affirmed, if it be affirmed only in part, and all damages and costs which shall be awarded against said appellants on said appeal, and also undertake to obey any order the appellate court may make in the premises; conditioned, however, that our liability hereunder shall not exceed fifteen thousand dollars. Dated December 16, 1884." On the appeal the judgment was affirmed by the Supreme Court of the Territory of Dakota.

Preliminary to the consideration of the merits, we must settle the question of the jurisdiction of the state courts to take cognizance of this action. Counsel for defendants insists that the power to render judgment on the undertaking sued on is vested

exclusively in the United States District Court for the district of North Dakota, sitting as a court of admiralty. He founds his contention upon the fact that the undertaking is the outgrowth of an action in admiralty, and on the proposition that any proceeding to enforce it is merely incidental to the main action in the course of which it was given. He asserts that a suit on the undertaking is an offshoot from the original proceeding,—is supplementel in character,—and that, therefore, the court in which it was given, and the court only, has power to enforce it. His argument certainly derives no support from the analogies of the law. If the doctrine to maintain which he has striven with great force in this court be a true doctrine, it stands alone. In no other case is it the rule that the court in which a bond, recognizance, undertaking, or other security is taken in the course of a judicial proceeding pending therein has exclusive jurisdiction of an action brought to enforce it. (Of course, where *scire facias* is resorted to, the court in which the main proceeding was had is the only court which can take jurisdiction.) An action on such security, whatever be its form, is always as much incidental to the original suit as this action is incidental to the admiralty proceeding in which the undertaking sued on was given. The security is in the same sense an outgrowth of the main litigation, and the action thereon is as strictly an offshoot from the original proceeding, as is any suit to enforce an appeal bond given in the course of an admiralty action an offshoot from such original proceeding in admiralty. And yet, aside from admiralty cases, no case can be found—with possibly a single exception, to which we will hereafter allude—holding that a suit to enforce any bond given during the progress of any judicial proceeding must be brought in the tribunal in which it was given. Undertakings given on suing out writs of attachments; undertakings given to secure the discharge of attachments; undertakings to obtain orders of arrest; undertakings to secure release from imprisonment thereunder; supersedeas bonds and undertakings on appeal; bonds given on the allowance of writs of injunction; bonds given by the plaintiff,

and also bonds given by the defendant, in replevin actions, to obtain possession *pendente lite* of the property in controversy,— all these and other obligations given in the course of judicial proceedings may, in the absence of some statute to the contrary, be sued on in any court having jurisdiction of actions on contract involving a like amount. That the court in which any such security is given is not vested with exclusive cognizance of an action thereon is apparent from the general trend of practice, which is to institute such an action in any tribunal possessing jurisdiction of actions on contract, where the amount is the same as that for which suit is brought on such security. If there is any class of actions as to which it might be claimed with great force that the exclusive cognizance of actions on a judicial bond inheres in the court in which it was given, it is the class to which belong actions on bonds given in claim and delivery proceedings in replevin cases. Proceedings to enforce such bonds are not only incidental to the main case, and an offshoot therefrom, but they are also supplemental in their character to the original action. The property to recover which the replevin suit is brought is released, and the bond substituted for its possession. In the event of the sheriff's inability after judgment, to produce the property or collect its adjudged value, the successful litigant, in proceeding to enforce the bond, is merely pursuing his original purpose to secure redress for the wrong done him in depriving him of the possession of his property. Such action is strictly supplemental in its nature, and if, in any case aside from the class of cases to be hereafter noted, a subsequent proceeding to enforce a judicial bond could be regarded as in any sense an essential part of the prior suit, it is in just such a case; and yet we can find no authority which holds that the exclusive cognizance of an action on such a bond is vested in the court in which it was given. In *McDermott* v. *Doyle*, 11 Mo. 443, the court ruled, not that the court in which the replevin bond was given had exclusive jurisdiction of an action to enforce it, but that the action should have been brought in such court, unless the plaintiff was prevented from suing on the

bond in that court. The language of the court in that case is that "the bond was given in the circuit court, and suit should have been instituted on it in that court, unless the party suing was prevented from instituting his suit in that court. The action on the bond, for a breach thereof, is virtually a continuance and part of the original detinue suit; and to permit the plaintiff to sue on the bond in the court of common pleas would be to permit him to divide his action, and prosecute one branch of it in the circuit court, and the other in the common pleas. On this point authorities are very abundant." In the first place, it is to be noticed that by necessary implication the court recognizes the fact that the question is not one of jurisdiction, by so qualifying the rule there enunciated as to allow the plaintiff to sue in another court when he is unable to bring his action in the court in which the bond was given. The utmost scope of the decision is that it is the duty of the plaintiff to sue in the latter court, if possible. To sustain this novel rule in actions on replevin bonds, the court cites the cases which lay down such a rule with respect to recognizances of bail. But this rule had its origin in a peculiar privilege enjoyed by the obligors on such recognizances, conferred upon them by statute. When proceeded against in the court in which such recognizance was taken, the statutue allowed the recognizors to retry the merits of the original action in which the recognizance was given, although judgment had already been rendered in such original action against the defendant therein. See the opinion of Smith, J., in *Lacaze* v. *Pennsylvania*, 1 Add. 59–90, and of Chew, J., in same case, at page 68. The courts have refused to allow the plaintiff to sue in another tribunal when he could bring his action in the court in which the recognizance was given, because they have assumed that the latter court only could give the recognizors the relief provided for by statute, or because, as some of the cases seem to indicate, no other court could afford the recognizors as effectual relief. According to Smith, J., in *Lacaze* v. *Pennsylvania*, 1 Add. 59-90, the foundation of the rule that the recognizors must be proceeded

against in the court in which the recognizance is a matter of record is that no other court can give them the equitable relief provided for by the statute; and according to the United States Supreme Court in *Davis* v. *Packard*, 7 Pet. 276, the rule rests upon the supposition that the court in which the recognizance was given is more competent to relieve the recognizors. It is therefore obvious that the foundation of the rule is the protection of the recognizors against the loss or impairment of this special privilege, statutory in its origin. The plaintiff cannot force them into a court in which they will be deprived of it altogether, or, at the most, will enjoy it shorn of a portion of its efficacy, unless he is powerless to sue in the court in which the recognizance was given. The rule is not that no other court possesses jurisdiction to entertain the action, but that the recognizors may, for their protection, insist that, when possible, the plaintiff shall proceed against them in the court in which they gave the recognizance. It is purely a personal privilege, and if the defendants waive it the case may proceed in any other tribunal in whose jurisdiction over the case they acquiesce. *Davis* v. *Packard*, 6 Wend. 327. This could not be done if such tribunal did not possess jurisdiction of the subject-matter, as consent will never confer such jurisdiction. In many cases the recognizors have been sued in another court, and the jurisdiction of such court sustained. *Davis* v. *Gillet*, 7 Johns. 318; *Haswell* v. *Bates*, 9 Johns. 80; *Gardiner* v. *Burham*, 12 Johns. 459. See, also, *Burtus* v. *McCarty*, 13 Johns. 424, and *Davis* v. *Packard*, 7 Pet. 276. Moreover, a recognizance was a matter of record, and in the nature of a judgment against the recognizors in the case in which it was given. *Davis* v. *Packard*, 6 Wend. 327, 330, 331; *Respublica* v. *Cobbett*, 3 Dall. 467-475. Proceedings to enforce it were by *scire facias*. They might therefore be regarded as part of the original action with much greater reason than an action like the one at bar, on an undertaking on appeal. It is therefore clear that the cases cited to support the decision of the court in *McDermott* v. *Doyle*, 11 Mo. 443, do not sustain it, in

so far as that case may be regarded as holding that exclusive jurisdiction of a proceeding to enforce a replevin bond resides in the court in which it was given. We feel justified in asserting it to be the general rule that the plaintiff may, in the absence of a statute regulating the matter, enforce any bond, undertaking, or other security given in the course of a judicial proceeding, in any court having jurisdiction of an action on contract for the amount he seeks to recover; and we are unable to discover any reason why this rule should not apply to an undertaking on appeal given in an admiralty action in *rem.* We are at a loss to understand on what principle it can be claimed that admiralty courts exercise a more extended jurisdiction than common-law courts in analogous cases. Formerly their powers were very much circumscribed, and, while it is true that their jurisdicition and powers have been considerably enlarged, we do not believe that they are in the possession of this exclusive jurisdiction which is not enjoyed by common-law courts in similar cases.

But counsel for defendants earnestly urges that a strong array of authority supports his contention. We are unable to agree with him in the view which he takes of the decisions he cites. It is undoubtedly true that courts of admiralty have power summarily to render judgment against stipulators upon any stipulation given during the progress of an admiralty proceeding, and that such judgment may be rendered in the very proceeding in which the stipulation was given. No new suit is necessary. Nor does it matter whether the stipulation is for value or for costs, or is given to perfect an appeal, or stay execution during the pendency thereof. *U. S.* v. *Ames*, 99 U. S. 35; *The Palmyra*, 12 Wheat. 1; *The Webb*, 14 Wall. 406; *The Wanata*, 95 U. S. 600; *The Lady Pike*, 96 U. S. 461; *Sawyer* v. *Oakman*, 11 Blatchf. 65, Fed. Cas. No. 12,403; *The Blanche Page*, 16 Blatchf 1, Fed. Cas. No. 1,524; *Id.*, 17 Blatchf. 221, Fed. Cas. No. 1,525; *The Alligator*, 1 Gall. 145, Fed. Cas. No. 248; *McLellan* v. *U. S.*, 1 Gall. 227. Fed. Cas. No. 8,895; *Nelson* v. *U. S.*, Pet. C. C. 235, Fed. Cas. No. 10,116; *The Virgin*, 8 Pet. 538; *The Baltic*, Fed. Cas. No. 826; *The*

*Sydney*, 47 Fed. 260; 2 Conk. Adm. p. 114; *Bartlett* v. *Spicer*, 75 N. Y. 528. By virtue of admiralty rules 3 and 4 of the United States Supreme Court, the same practice is prescribed with respect to stipulations or bonds given in proceedings in personam to secure the discharge of an attachment or the release of the defendant from arrest. See these rules in Ben. Adm. pp. 381, 382.

Nor does the fact that a bond, instead of a stipulation, is taken, alter the rule that the admiralty court may, in the same proceeding, summarily enforce the obligation. Bonds are regarded in admiralty as stipulations to be enforced in the same manner. *The Wanata*, 95 U. S. 600; *The Alligator*, 1. Gall. 145, Fed. Cas. No. 248; *McLellan* v. *U. S.*, 1 Gall. 227, Fed. Cas. No. 8,895; *Nelson* v. *U. S.*, Pet. C. C. 235, Fed. Cas. No. 10,116; Conk. Adm. 434; *The Sydney*, 47 Fed. 260; Dunl. Adm. Prac. 164. Neither does the power of the court to render in the same action judgment against the parties bound by the stipulation or bond depend upon their express consent recited in the obligation, or their submission to the jurisdiction of the court by the terms of the security. It was long customary to embody such submission and consent in stipulations, and this is still done in many cases. It is possible that this doctrine that an admiralty court may proceed in the same suit summarily against the stipulators may have had its origin in such submission and consent. But, however this may be, such doctrine no longer rests thereon. In several cases in which this practice was upheld and followed with respect to supersedeas bonds on appeal, such bonds contained no clause by which the obligors in terms submitted themselves to the jurisdiction of the court, nor did they contain any consent that execution might issue against them in the same action in a summary manner. *The Sydney*, 47 Fed. 260; *The Blanche Page*, 16 Blatchf. 1, Fed. Cas. No. 1,524; *Id.*, 17 Blatchf. 221, Fed. Cas. No. 1,525; *The New Orleans*, 17 Blatchf. 216, Fed. Cas. No. 10,181; *The Wanata*, 95 U. S. 600. See, also, *The Alligator*, 1 Gall. 145, Fed. Cas. No. 248; *Sawyer* v. *Oakman*, 11 Blatchf. 65

Fed. Cas. No. 12,403; *Ex parte Sawyer*, 21 Wall. 235. Mr.
Conklin, in his work on Admiralty Practice, in which he declares
that bonds and stipulations are placed in the same category, so
far as the procedure to enforce them is concerned (page 434,)
sets out at length the forms of bonds which may be given,
instead of stipulations, in various stages of an admiralty proceed-
ing; and in none of them is any submission to the jurisdiction of
the court, or consent to summary proceeding to enforce the bond,
to be found. Conk. Adm. pp. 574, 575, 581, 582, 589. He says
that in this country the clause expressing the consent of the
stipulators that execution issue against their property, on the
bond to enforce the decree, is not necessary. *Id.*, p. 582, note.
We are strongly of the opinion that the United States District
Court for the district of North Dakota has jurisdiction to render
judgment against the persons who executed the undertaking in
suit, and to this extent we agree with counsel for defendants.
It has the same power which it would have had if the admiralty
suit in which such undertaking was given had been instituted in
such court subsequently to statehood. It is the successor of the
old Territorial District Court in which this action was brought,
so far as such court was vested with admiralty jurisdiction.
Section 22 of the enabling act. *The Walla Walla*, 44 Fed. 4.
That the Territorial District Court was vested by the act of con-
gress with the same admiralty jurisdiction as was vested in the
several District Courts of the United States, is clear from the
language of section 1910 of the Revised Statutes of the United
States, which declared that the District Courts of the several
territories therein referred to (Dakota being one of them) should
have and exercise the same jurisdiction in all cases arising under
the constitution and laws of the United States as was vested in the
Circuit and District Courts of the United States. The authorities
are explicit that under such legislation the same admiralty juris-
diction is vested in the Territorial District Courts as is vested in
Federal District Courts. *Houseman* v. *Cargo of The North Caro-*

*lina*, 15 Pet. 40; *The City of Panama*, 101 U. S. 453; *The Eclipse*, 135 U. S. 599, 10 Sup. Ct. 873. That the Territorial District Court had admiralty jurisdiction was held by the court in *The Eclipse* case; and that the proceeding in which the undertaking sued on was regarded by that court as an admiralty proceeding is apparent, not only from the language of the opinion in that case, but also from the fact that, being vested by congress with the duty of deciding what cases were and what were not exclusively of federal cognizance, on remanding them after final decision (see section 22 of the enabling act,) the court remanded *The Eclipse* case to the United States District Court for the district of North Dakota, instead of to the State District Court. Therefore, in determining what power the Federal District Court for the district of North Dakota has to enforce the undertaking in suit, we must proceed on the same theory on which we would proceed if the original admiralty suit had been commenced after such Federal Court had, by the admission of North Dakota into the Union, come into existence. The authorities seem to warrant the counsel for defendants in his contention that that court has full jurisdiction to enforce the undertaking sued on. But the right to exercise jurisdiction does not necessarily carry with it the right to an exclusive exercise of such jurisdiction. The plaintiff may at his election, proceed in that court, but we do not think he is bound to resort to that tribunal. The language of Smith, J., in *Lacaze* v. *Pennsylvania*, 1 Add. 59, 89, 90, in which this very question was involved, is in harmony with our views: "That all proceedings legally commenced in any court to which the parties have agreed to submit may be more properly carried into execution by that court than by any other, and that no superior court ought to prohibit the inferior court from carrying such proceedings to execution, unless when authority is expressly given to the Superior Court for this purpose, seems not to admit of dispute, when the party entitled to the effect of those proceedings applies to the inferior court to have them carried into execution. But does it follow that, if the party entitled to such effect

chooses to apply to a Superior Court of common-law and general jurisdiction, the Superior Court is precluded from carrying into effect any of the acts of the inferior court? Does this follow, especially when the party applying has been forced into the inferior court? If the party who has chosen the admiralty jurisdiction in which to institute a suit should be confined to that court to the conclusion of the transaction, does it follow that the other party, who has been forced into it, should be thereby deprived of his election of applying to the courts of common-law and of trial by jury to carry into effect a stipulation taken in the cause by the admiralty, and so deprived without the intervention of positive law or any solemnly adjudged case? I think the affirmative cannot be supported." The plaintiff in this case did not seek a court of admiralty. He was forced into it by the libelants in the original case. To assert that he has made his election to proceed in admiralty, when he might have proceeded at common-law or in equity, and that, therefore, he is bound by his election, and hence that all proceedings which grow out of the principal case must by him be instituted in the admiralty court, is to ignore the undisputed facts of this litigation. He was dragged into admiralty by the libelants, when, as the United States Supreme Court held in that very case, the remedy of the libelants to secure the relief they were after was in a court of equity, for an accounting, and not in admiralty at all.

The courts in holding that stipulations may be enforced, against those that sign them, by summary proceedings in the original case, do not adjudge such proceedings to be an essential part of the main suit. The title of the original action is used. The proceedings are carried on with greater dispatch than a formal action, and the procedure is much simpler. But, in its essence, it is an independent litigation against new parties,—the stipulators. They cannot, it is true, retry the merits of the original action; but they have an absolute right to be heard, at some stage of the proceeding before their property is finally wrested from them under execution, on the questions whether they in

fact signed the stipulation, and whether it is a valid and binding instrument. These facts may be put in issue by them, and some kind of notice must be given to them, and some opportunity afforded them to litigate such facts. The proceeding against the stipulators is, in its essential nature, as much an independent proceeding against them as though an entirely new action were instituted on the stipulation in the usual way, unless, indeed, such proceeding is indispensable to secure to the successful litigant the fruits of his victory according to the usages of courts of justice. This brings us to an important, and, in our judgment, controlling, distinction. A proceeding to enforce a stipulation for value, give in an action exclusively *in rem*, in admiralty, is an indispensable part of such action. Without it the action would be of no possible benefit to the suitor who had won. In an admiralty action, exclusively *in rem*, there is no personal defendant; and therefore no judgment against a personal defendant can be rendered, aside from a judgment on the stipulation for value, in case one is given. The suit is against an impersonal defendant, —the *res*. After it is seized the owner may appear, and on establishing his rights as owner he may secure the release of the *res* by the giving of the stipulation for value. Thereafter the original *res* disappears from the case, and the substituted *res* takes its place. Henceforth the suit is against the substituted *res*, and the court exercises, and must, from the necessities of the case, exercise, the same jurisdiction over it that it would have exercised over the original *res*, had such *res* remained in the possession and under the control of the court. The remedy is transferred from the ship to the stipulation. *U. S.* v. *Ames*, 99 U. S. 35; *The Palmyra*, 12 Wheat. 1; *The Webb*, 14 Wall. 406; *The Haytian Republic*, 14 Sup. Ct. 992. It is true that in cases of fraud or mistake, or when the *res* has been improvidently released, the court possesses ample power to order its return to the custody of the marshal. *The Thales*, 3 Ben. 327, Fed. Cas. No. 13,855; *The Virgo*, 13 Blatchf. 255, Fed. Cas. No. 16,976; *Livingston* v. *The Jewess*, 1 Ben. 21, note. Fed. Cas. No. 8,412; *The Union*, 4

Blatchf. 90, Fed. Cas. No. 14,346; *The Favorite*, 2 Flip. 86, Fed. Cas. No. 4,698; 2 Pars. Shipp. & Adm. 411; *The Haytian Republic*, 14 Sup. Ct. 992, 994; *U. S.* v. *Ames*, 99 U. S. 35. But this must be done before final judgment against the stipulators. *Id.* And when this is done the stipulation is necessarily annulled. The libelant cannot have a remedy against both the *res* and the stipulation for value. The stipulation is not additional security. It is the only security. In every case, therefore, in which there is a valid stipulation for value, which may be enforced, no resort to the original *res* can be had. It is true that in every suit in *rem*, brought to enforce some claim against the *res*, the judgment, in terms, condemns the original *res* to be sold to satisfy the amount for which judgment is rendered. But such judgment is never enforced against the original *res* in those cases in which a stipulation has been given, and has not been annulled by the return of the original *res* to the custody of the marshal, under the order of the court. 2 Fost. Fed. Prac. § 416. This is recognized by all the decisions, and is an elementary principle of admiralty practice. Having no power to render a personal judgment against the owner, and no power to enforce according to its terms the judgment formally rendered against the original *res*, a judgment against the stipulators, on their stipulation, is an indispensable step in the case. Without it the remedy would be incomplete. The action would be a farce. The question of abstract right would be settled, but no means would be provided, by the employment of which the successful suitor could enforce the claim which the court had decreed to be just. Judicial tribunals are not wont to administer justice after the manner of moot courts. It is their invariable practice to give the victorious litigant a judgment which will be enforced by the court rendering it according to its terms. The only judgment which a court of admiralty can render in a proceeding in *rem*, brought to enforce a claim against the *res*, which it will execute according to the terms of such judgment, in those cases in which a stipulation for value has been given, and has not been annulled by the

reseizure of the original *res* under the order of the court, is a judgment against the stipulators for value. And hence such a judgment is an integral part of the action in which such stipulation was given. It is as much an indispensable step in the case as any prior proceeding therein, or as proceedings with respect to the sale of the original *res* after judgment, in cases where such *res* has not been released. There is, therefore, an obvious reason for holding that the enforcement of the stipulation against the stipulators for value, in such cases, is within the exclusive cognizance of the court in which it was given. It is within its exclusive jurisdiction, the same as any other essential part of the case. No court has power to lay hold of an unfinished litigation pending in another court, and take cognizance of its remaining stages. The whole case must be finished in the forum in which it was started.

There is another conclusive reason why the court in which the stipulation for value is given has sole cognizance of the proceedings to enforce it: Its jurisdiction over the original *res* is exclusive. Such jurisdiction includes the power to make the *res* produce, up to its value, in that very suit, the money to satisfy the libelant's claim. This is accomplished by a sale after judgment. The stipulation takes the place of the ship. It, in turn, becomes the *res*, and over it the court exercises the same jurisdiction as over the vessel where it is not released. The court has, and must have, power, in the same suit, to make this new or substituted *res* produce, up to its value, money to satisfy the libelant's claim. The procedure against the stipulation is different from the procedure against the vessel, because the former differs from the latter in its nature. In making the stipulation produce money to apply on libelant's claim, the admiralty court proceeds as other courts proceed against similar instruments. It does not sell the obligation at public auction, but renders judgment and awards execution against the obligors therein. This it has the exclusive power to do just as it possesses exclusive jurisdiction to sell the original *res* in case it is not released from the control of the court. But

the instrument sued on in the case a bar is an appeal bond, and not a stipulation for value, and judgment on such a bond is not an essential part of the admiralty proceeding in which it is given. The admiralty court in such a case can, without awarding judgment thereon in the same action, render a judgment which it will enforce according to its terms,—either a judgment against the original *res*, to be enforced against it by sale thereof in case it has not been released, or a judgment against the stipulators for value, in case it has been released, to be enforced against them by a general execution against their property. As a judgment against the sureties on an appeal bond is not an indispensable step in the case, as it is a judgment against stipulators for value, and as it is not a substituted *res* admiralty does not possess exclusive cognizance of the proceeding to enforce such bond. Many of the cases cited by counsel for defendants are cases which merely hold that summary judgment may be rendered in the original action against stipulators for value for costs, and sureties on appeal bond. They do not decide that admiralty has exclusive jurisdiction of proceedings to enforce such instruments. The case of *Bartlett* v. *Spicer*, 75 N. Y. 528, relied on by counsel for defendants, involved a stipulation for value, and not an appeal bond; and, for the reasons already set forth, such a case is therefore not in point. Moreover, the stipulation was given in an action in admiralty instituted by the majority owners of the vessel to secure possession thereof for a voyage. Such a remedy a common-law court was powerless to give. Exclusive jurisdiction of the subject matter rested with admiralty; and the decision of the court in the Bartlett Case is based on the ground that the proceeding to enforce such a stipulation is part of the original subject matter,—a subject matter within the exclusive cognizance of admiralty, just as in a prize case. But admiralty did not possess exclusive cognizance of the remedy which the libelants sought to enforce by their proceeding in admiralty. It is entirely competent for a court of common-law jurisdiction to entertain an action to recover possession of a vessel. *Taylor* v. *The Royal Saxon*, 1

Wall. Jr. 311, Fed. Cas. No. 13,803. See, also, *Steamboat Co.* v. *Chase*, 16 Wall. 522. The subject matter of the original case not being within the exclusive jurisdiction of the admiralty, as in *Bartlett* v. *Spicer*, the reasoning of the court in that case does not apply. None of the decisions cited by the New York court of appeals in the Bartlett Case decide that admiralty has exclusive cognizance of actions to enforce even stipulations for value in cases on the instance side of the court, and in *Lacaze* v. *Pennsylvania*, 1 Add. 59, the majority of the court were of the contrary opinion. Three of the judges, (Chew, Biddle, and Smith) were of opinion that an action of debt would lie on such stipulation in a common-law court. Rush, J., while concurring in the result, thought that admiralty had exclusive jurisdiction. Addison inclined somewhat to the same view, but was by no means emphatic in the expression of his opinion. While, for the peculiar reasons already stated, we do not think that the doctrine of concurrent jurisdiction is applicable to proceedings to enforce stipulations for value, yet, with respect to appeal bonds, the reasoning of the majority opinions in *Lacaze* v. *Pennsylvania* seems to us to be conclusive. See these parts of such opinions as pages 65-68, 88-91, 1 Add.

It is true that cases can be found in which it has been asserted that admiralty has exclusive jurisdiction to enforce all bonds and stipulations given in admiralty proceedings. But these cases will be found, on examination, to be prize cases, and not actions on the instance side of the court. Such were the cases of *Smart* v. *Wolff*, 3 Term R. 336; *Brymer* v. *Atkins*, 1 H. Bl. 164. It is on this ground that these cases are distinguished by Chief Justice Chew in *Lacaze* v. *Pennsylvania*, 1 Add. 65, 66. The cases of *Penhallow* v. *Doane's Adm'rs*, 3 Dall. 54, and *Jennings* v. *Carson*, 4 Cranch, 5, cited by counsel for defendants, were both cases of prize. So are the cases of *Sasportas* v. *Jennings*, 1 Bay, 470; *LeCaux* v. *Eden*, Doug. 594; *Doane's Adm'rs* v. *Penhallow*, 1 Dall. 218; *Ross* v. *Rittenhouse*, 2 Dall. 160, 1 Yeates, 443; *Simpson* v. *Nadeau*, Cam. and N. 115; *Cheriot* v. *Foussat*, 3 Bin. 220; and *Novion* v. *Hallett*, 16 Johns.

327. Except the New York case (*Bartlett* v. *Spicer*), we have been unable to find a single authority which asserts the exclusive jurisdiction of admiralty to enforce bonds and stipulations taken on the instance side of the court. The reason for the distinction, so far as the question of exclusive jurisdiction is concerned, between cases of prize and actions on the instance side of the court, is obvious. When sitting as a prize court, the tribunal is administering the laws of nations, and not the mere municipal jurisprudence of a single state or kingdom. The rights of foreigners are often involved. The decision in such a case may effect the public relations of the government whose tribunal had cognizance of the cause. Great international rights growing out of a state of war are generally at issue. No court of a nation, therefore, except such as is recognized by all the civilized powers as the proper tribunal in that nation to deal with such matters, should ever exercise any jurisdiction over the case or any of its incidents. Under such circumstances, the incidents are inseparably bound up with the main cause. This cogent reason for investing prize courts with exclusive jurisdiction over the whole controversy— incidental matters as well as the principal litigation—has been recognized by the master minds in jurisprudence. Said Chancellor Kent in *Novion* v. *Hallett*, 16 Johns. 327, at page 334: "Such cases generally arise between native citizens or subjects and foreigners, and it is highly expedient that they should be decided by general laws, known and adopted by every nation. Courts of common law are governed by local, municipal laws, and are incompetent, as Lord Mansfield afterwards observed, in *Lindo* v. *Rodney*, Doug. 613, note, 'to embrace the whole of the subject.' Matters of prize, and of piratical capture, without regular authority, involve more or less the responsibility of the national government, and may affect the public relations of the country. It is therefore exceedingly fit that they should be discussed and tried in a court proceeding according to rules of national law equally known to every country, and which court is specially intrusted with the cognizance of such questions." In *Lacaze* v.

*Pennsylvania*, 1 Add. 55, Rush, J., at page 97, referring to the decision of the court in *Le Caux* v. *Eden*, Doug. 594-597, said: "As the admiralty had full authority to remedy an unlawful capture and all its consequences, the court thought it would be extremely inconvenient to withdraw this question, or any of its incidents, from the jurisdiction proceeding on a general law of all nations, and in a summary and equitable manner, and bring it before the jurisdiction governed by a limited municipal law, and proceeding with a formality and a mode ill suited to the nature of the subject. If captors were liable to a suit at common law by every person affected by the capture, none would venture to take a prize. And if foreigners had no remedy for injuries done to their property under color of prize but from suits in our courts of municipal law, to the principles and effects of which they are strangers, mutual confidence between nations would be destroyed; and, in a war between any two nations, all others would protect themselves by force, and compel by arms that administration of justice to which they are reciprocally entitled." But, when sitting as an instance court, a court of admiralty administers, not the laws of nations, but the municipal regulations of the jurisdiction under whose laws the tribunal is erected. Unlike a prize court, the instance court has not exclusive power to afford the suitor redress. There is nearly always a concurrent remedy at law. Section 563, subd. 8, of the Revised Statutes of the United States, saves this right to every litigant. It is true that the suitor cannot, in this country, proceed in *rem* in any other court. The *Moses Taylor*, 4 Wall. 411. But he always has a remedy in a common-law court to enforce the claim or redress the wrong of which he complains. *Percival* v. *Hickey*, 18 Johns. 257-291; *Leon* v. *Galceran*, 11 Wall. 185; *Schoonmaker* v. *Gilmore*, 102 U. S. 118; Ben. Adm. §·§ 201, 205; *Steamboat Co.* v. *Chase*, 16 Wall. 522. There is, therefore, no more reason for the exclusive jurisdiction of an instance court over the incidents of the main case, than for the exclusive jurisdiction of any other of the municipal courts of the same government which administer the purely

municipal law of that government over the incidents of an action tried and determined therein.

The Federal Supreme Court appears to have settled the question involved, under facts precisely the same as in the case at bar, so far as the issue of jurisdiction is concerned. An admiralty action in personam was instituted in the United States District Court, sitting as an admiralty court. The case having been decided in favor of the libelant in the District Court, and thereafter on appeal in the Circuit Court, it was carried by appeal to the Federal Supreme Court. On that appeal a supersedeas bond was given. The judgment of the lower court was affirmed. *New Jersey Steam Nav. Co.* v. *Merchants' Bank of Boston*, 6 How. 344. Instead of securing judgment against the sureties on the appeal bond in the very case in which the bond was given, the libelant sued them in the United States Circuit Court in an action of debt. This was a suit in a common-law court, and not in an admiralty court. The United States Circuit Court had common-law jurisdiction, but no original jurisdiction in admiralty cases. *Governor of Georgia* v. *Madrazo*, 1 Pet. 110. It could take cognizance of such cases only on appeal. The action to enforce the appeal bond was, like this action, a common-law action brought in a court possessing original jurisdiction of common-law and not of admiralty cases. *Ives* v. *Bank*, 12 How. 159. No one connected with the case, from the time the United States Supreme Court affirmed the original judgment on appeal (6 How. 344,) seems to have had any thought that the only remedy on the appeal bond was in admiralty. If such had been the law, the court in the Ives case would have declared the judgment appealed from a nullity, for want of jurisdiction of the subject matter. If counsel for defendants be correct in his contention, then both the judgments of both the Circuit and the Supreme Court were void, and always have been. With this case before us, we feel constrained to hold that the District Court of this state has jurisdiction of the subject matter of this action, and the case is therefore properly before us on appeal. We are of opinion that sound

principal supports our view. The dictum of Judge Blatchford in *The Blanche Page*, 16 Blatchf. 1 Fed. Cas. No. 1,524, so far as it indicates that it was his opinion that admiralty only could render judgment on an appeal bond taken in the course of admiralty proceedings, cannot prevail against the decision in the Ives case. We attach very little importance to this dictum, in view of the facts of the case in which it was uttered; and it is apparent that he regarded the appeal bond as having been given under the act of 1847, which, in terms, declares that judgment shall be rendered in the very case in which the bond was given. The statute which authorized the giving of such bonds having declared how they should be enforced, that remedy might be regarded as exclusive. The effect of our refusal to entertain jurisdiction might be serious, in case we were in error in so holding. But no irremediable harm can flow from our taking jurisdiction of this case, as the Federal Supreme Court, on writ of error, can reverse our judgment, if we are wrong. Indeed, our judgment, in that event, would be a nullity, and could be attacked collaterally in any court having jurisdiction of the subject matter and the parties. So far from its being the rule that a court has exclusive jurisdiction of all the incidents of an action, it is a well settled doctrine that the court of equity in which an injunction bond has been given has no power, on dissolving the injunction, to render judgment on the bond, or even to assess the damages sustained by the defendant by reason of the injunction, unless some statute gives such power. The defendant must sue at law on the bond. 2 High, Inj. § § 1642, 1657, and cases cited.

A large number of cases have been cited by defendants' counsel, holding that an action may be maintained in the Federal Court, irrespective of diverse citizenship, if such action is an offshoot from another suit of which such Federal Court had jurisdiction. Among them are *Bobyshall* v. *Oppenheimer*, Fed. Cas. No. 1,592; *Arnold* v. *Frost*, Fed. Cas. No. 558; *Lacassagne* v. *Chapuis*, 144 U. S. 119, 12 Sup. Ct. 659; *Campbell* v. *Hadley*, 1 Spr. 470, Fed. Cas. No. 2,358; *Seymour* v. *Construction Co.*, 7 Biss. 460, Fed. Cas. No.

12,689. But none of the cases cited hold that the Federal Court has exclusive jurisdiction under such circumstances. The decision in *Wade* v. *Wortsman*, 29 Fed. 754, is hostile to the contention of counsel for defendant. The original replevin suit was carried on in the United States Circuit Court. After judgment therein an action was commenced in a state court on a forthcoming bond given in such replevin suit. It was removed to the United States Circuit Court. The motion to remand was denied. But, if counsel's views be sound,—that the Federal Court had exclusive jurisdiction of the second action,—the motion must have been granted; for the Federal Court can never secure jurisdiction of a case by transfer from a state court under the laws of the United States, unless the state court had jurisdiction of the cause, so there could be something before it to be transferred. By holding that the case was properly removed to the Federal Court, the court necessarily held that the state court had jurisdiction of the case before it was so removed. In *Myers* v. *Block*, 7 Sup. Ct. 525, the court affirmed a judgment of the state court in an action of debt on an injunction bond given in a case in equity in the Federal Circuit Court. In *Campbell* v. *Hadley*, 1 Spr. 470, Fed. Cas. No. 2,358, the court merely held that the Federal District Court had jurisdiction of an action in the nature of a *scire facias* on a bail bond given in admiralty proceedings to secure release of defendant from execution. But the court did not decide that no other court had jurisdiction.

It is urged that the state courts ought not to take jurisdiction of this case, for the reason that the plaintiff has an adequate remedy by proceeding in the original admiralty case. While it is true that courts of equity will refuse to entertain a bill to set aside a judgment, where there is an adequate remedy by motion in the action in which the judgment was rendered, we have been unable to discover any decision making that general doctrine of equity jurisprudence applicable to suits at law. The fact that the suitor has another remedy, which may be more speedy, and even more efficacious, does not debar him from bringing his action at

law. It appears to be the rule that, despite the fact that the respondent in an appeal has, by statute, a summary remedy to enforce the appeal bond, in the very case in which it was given, still he may sue on the bond at law. 1 Enc. Pl. & Prac. 1018.

It is next urged that comity requires us to refuse to take jurisdiction of this case. The cases to which we are cited on this point hold that where in an action in a Federal Court, property has been seized, the state courts must not interfere with the control of the property by the Federal Court, but that, if any person not a party to the suit desires to litigate his right to the property, he must intervene in the action, and there try his case. We have carefully examined these decisions, but the great length of this opinion prevents a review of them. It is sufficient to say that we are clear that they do not lay down any rule inimical to the jurisdiction of the state courts over this action. The rule which they lay down is thus stated in *Cohen* v. *Solomon*, 66 Fed. 411, at page 413: "No principle is more firmly intrenched in the law than that doctrine that, when one court acquires jurisdiction and power over the *res*, no other court can interfere with its possession and control." Many of the cases cited by counsel for defendants are there referred to. In *Meyers* v. *Block*, 120 U. S. 206, 7 Sup. Ct. 525, the court affirmed a judgment of the state court in an action on an injunction bond given in an action in equity in the Federal Court. This case is hostile to this contention of defendant's counsel. It furnishes, also, a complete answer to his contention that the suit on the appeal bond is ancillary to the proceedings in the admiralty court, within the scope of the rule that such proceedings must be carried on in the state or Federal Court in which the main action was litigated. The cases cited by counsel for defendants in this connection are cases in which the courts have held that the proceedings were inseparably connected with the enforcement of the judgment in the main action, and were therefore only additional steps in that action, looking to the enforcement of such judgment. The great length of this opinion prevents a more particular reference to

these cases. A casual examination of them cannot fail to show that they are not in point. They are *Flash* v. *Dillon*, 22 Fed. 1; *Buford* v. *Strother*, 10 Fed. 406; *Pratt* v. *Albright*, 9 Fed. 634; *Poole* v. *Thatcherdeft*, 19 Fed. 49; *Bank* v. *Turnbull*, 16 Wall. 190. This action is not in any sense a proceeding to enforce, nor is it in any manner connected with the enforcement of, the judgment in the admiralty case. On the contrary, it proceeds on the theory that plaintiff has been and is unable to enforce it, and that, therefore, he desires to compel those to pay him the damages he has thereby sustained who have agreed to be bound in the event that he should not be able to enforce it. The decision in *Meyers* v. *Block*, 120 U. S. 206, 7 Sup. Ct. 525, is, as we have said, an authority against the defendants on this branch of the case.

We now come to the merits of the case. The defendants' counsel contends that the undetaking sued on is void. The plaintiff seeks to recover damages for the alleged breach of the condition of the undertaking that the obligors would obey any order the appellate court might make in the premises. The defendants' counsel asserts that, so far as this provision of the undertaking is concerned, the undertaking is void as a statutory undertaking. A consideration of this branch of the case necessitates a more particular reference to the facts. The action in which the undertaking was given was an action in admiralty in a cause of possession, civil and maritime, instituted in the District Court of the Territory of Dakota, for the Third Judicial District thereof, sitting as a court of admiralty under the laws of the United States. The power of such court to take jurisdiction of such an action was derived, as we have before said, from section 1910 of the Revised Statutes of the United States. This section provided that the District Courts of the several territories referred to therein (Dakota being one of them) should have and exercise the same jurisdiction, in all cases arising under the constitution and laws of the United States, as was vested in the Circuit and District Courts of the United States. That such a statute is valid, and that its effect was to vest in the Territorial

District Court of Dakota Territory full admiralty jurisdiction, is well settled. *Houseman* v. *Cargo of The North Carolina*, 15 Pet. 40; *The City of Panama*, 101 U. S. 453; *The Eclipse*, 135 U. S. 599, 10 Sup. Ct. 873. This same section declares that "writs of error and appeals in all such cases may be had to the Supreme Court of each territory as in other cases." Construing this last provision, the Supreme Court of Dakota, when the admiralty case in question was before it on appeal, held that such appeal, and all appeals in admiralty cases from the District Court to that court, should be governed by the laws, statutes, and rules that obtained in other civil actions tried in such District Court. *Rea* v. *The Eclipse*, (Dak.) 30 N. W. 159. Both parties agree that this decision correctly states the law on this subject. It being conceded that the statutes of the Territory of Dakota regulated the appeal in that case, we will first treat the case from that standpoint. We therefore come to the question whether this undertaking is valid as a statutory supersedeas undertaking.

It is claimed by the plaintiff that the judgment appealed from directed the delivery of personal property, and that, therefore, the execution of a mere cost bond would not have been sufficient to stay the execution of such judgment. Section 416 of the Code of Civil Procedure, as revised in 1877 (the statute in force when the appeal in question was taken,) provides that: "If the judgment appealed from direct the assignment or delivery of documents or personal property, the execution of the judgment shall not be stayed by appeal, unless the things required to be assigned or delivered be brought into court, or placed in the custody of such officer or receiver as the court shall appoint, or unless an undertaking be entered into on the part of the appellant, by at least two sureties, and in such amount as the court, or judge thereof, shall direct, to the effect that the appellant will obey the order of the appellate court upon the appeal." The judgment that was appealed from did not, in terms, direct the delivery by the appellants, on such appeal, of the steamboat Eclipse, her tackle, apparel, and furniture. It merely adjudged that the

claimant, who is the plaintiff in this case, was the owner of one-half of such property, and entitled to the possession thereof; that the libel be dismissed, with costs, and that the intervention of certain parties who had intervened in the case be dismissed, with costs; and that the marshal deliver the possession of such property to such claimant. Had the District Court as a court of admiralty, ordered that the marshal deliver the property to the libelants in that action, or to the interveners, on their giving proper security (whether this could be done we do not decide,) it is obvious that the judgment of the court must have been against the parties so lawfully in possession of the property, directing them to deliver such property to the claimant. In such a case there would have been a judgment directing a delivery of personal property, within the letter and the spirit of section 416, assuming that this section was intended to apply to admiralty cases. But that the particular judgment which was in fact rendered was not a judgment for the delivery of personal property, within the meaning of section 416, Code Civil Procedure, does not admit of doubt. That judgment merely adjudged that the claimant was entitled to possession. It did not direct that the libelants or intervenors deliver such possession. The judgment itself does not show that they were in possession. Its language indicates the contrary. We do not understand that in admiralty the libelant is ever allowed to secure possession of the *res pendente lite*, unless the action is to secure possession of the vessel for a voyage. In an action to secure absolute possession of a vessel, there seems to be no practice authorizing a delivery of the *res* to the libelant *pendente lite*. We must assume, therefore, that the property was in the legal custody of the marshal, as the hand of the court. The finding of fact (assuming that we may consider it at all) that the marshal had delivered possession of the steamer to the interveners in the action without any order of court does show that the legal possession of the property was anywhere except in the marshal. The court did not lose its control over

N. D. R.—15.

the steamer by the illegal act of the marshal in suffering the intervenors to take possession thereof *pendente lite*. *The Rio Grande*, 23 Wall. 458. The marshal and his official sureties were liable to the claimant for his failure to keep possession of the steamer, as it was his clear duty to do. *The Jack Jewett*, 2 Ben. 353, Fed. Cas. No. 7,121. The judgment of the court recognized this obligation by directing that the marshal deliver the steamer to the claimant. The obvious meaning of this clause of the judgment is not that the marshal, as the executive officer of the . court, shall take the property from the interveners or libelants, as under a judgment directing them to deliver the property to the claimant, but that the marshal (who is the legal custodian of the property, and is therefore responsible for the possession of the property, irrespective of what he has done with it) shall himself deliver to the claimant the property, which the law regards him (the marshal) as having in his control. If he had delivered it to any one *pendente lite*, it was to hold it for him. The law does not, in such a case, recognize the possession of any one else. The court deals with the marshal alone, in directing what shall be done with such possession. The judgment was therefore not a judgment against either the libelants or the interveners, directing them to deliver possession of the property to the claimant, but was merely a judgment declaring that the latter was entitled to the possession thereof, which the law deemed to be held by the marshal, as the hand of the court. Had the purpose of the court been to award a judgment against the libelants or interveners, directing them to deliver possession to the claimant, the phraseology of the judgment would have been different. It would have been similar to that of a judgment in a replevin action where the property is in the legal possession of the unsuccessful party. Such a judgment, in terms, adjudges that the plaintiff or defendant, as the case may be, recover possession of the property of the adverse party, who has such legal possession. But where the adverse party has no such possession, the property being already in the possession of the successful suitor, the judgment merely

provides, as does the judgment under consideration, that the successful party is entitled to the possession. Comp. Laws, § 5099; 2 Abb. Forms, 554. In replevin actions the property is never left in the custody of the officer *pendente lite*, but always in the possession of one of the parties to the suit. Hence a judgment in such cases adjudging that one party is entitled to possession never contains a provision that the officer deliver the possession to him. But in admiralty actions to recover possession the property may be, and in this case it would seem that it actually was, left in the legal custody of the marshal during the pendency of the action. It was therefore entirely proper that the clause directing the marshal to deliver the property to the claimant should have been inserted in the judgment. It was aimed at the marshal solely, because the court regarded him as it was bound to do, as being legally in possession of the property. If the court had intended to render a judgment directing the libelants or interveners to deliver the possession of the property to the claimant, or that he recover the possession from them, it would have expressed such purpose in the judgment itself. The marshal in taking the property from the possession of the interveners, to enable him to comply with the judgment, would not have made the seizure under the judgment, but under his right to revest himself with the possession of such property *pendente lite*. He had the same power to take it from the possession of the interveners before the judgment was rendered. That the judgment was not a judgment directing the delivery of personal property, within the meaning of section 416, Code Civil Proc., is plain, when we consider the object of this section. It was passed to require the appellant to give a supersedeas bond in order to stay execution in cases in which the property should be in the legal possession of the adverse party, and would be left there by stay of execution. In such cases the respondent needs security. But when such property is in the custody of the court there is no occasion for additional security on appeal, as the party has the security of the court's control of it as much after appeal as

before. The stay of execution will merely leave it where it was before,—not in the hands of a party, but in the custody of the court. That no supersedeas bond was required to be given to secure a stay, where the property was already legally in the custody of the court, is apparent from that provision of section 416 which gives the appellant the option of placing the property in the custody of the court, and thus securing a stay. If he can secure a stay by the giving of a cost bond, and the surrender of the property to the control of court, he may obtain a stay by the giving of such cost bond when the property is already legally in the control of the court. A stay of execution in the admiralty case in which the appeal bond sued on was given would not have left the property in the possession of the interveners, as a matter of legal right. The legal possession was all the time in the marshal, and he could at any time (as well after execution had been stayed as before) have taken the property from the interveners, and have held it himself pending the appeal. If an appeal, with stay of execution, would have entitled the interveners to retain possession of the property during the pendency of the appeal, the marshal would have been exonerated from liability because of their possession. But it was never the purpose of the court, in rendering the judgment in the admiralty case, to release the marshal from liability. On the contrary, it expressly ordered that he, and not the parties to the suit, should deliver the property to the claimant. We very much question the power of the admiralty court to discharge the marshal from liability without the consent of the claimant, in a suit in which such question was not at issue; and, if the marshal continued liable, it is because the intervenors, during the pendency of the appeal, had no right, as against him, to retain possession of the property.

In determining whether the judgment appealed from is of such character that a stay of proceedings under it will entitle the appellant to hold possession of the property which the judgment declares shall be delivered to the adverse party, we are never to

look at the practical, but at the legal, situation at the time judgment was rendered, if it is at all permissable to travel outside of the terms of the judgment itself. A stay of proceedings confers no new privilege. It merely restores a right lost by the judgment whose execution is superseded. Unless the appellant had a legal right temporarily to hold the property in controversy before the judgment was rendered, he can secure no such right by staying the execution of such judgment. Of course, in speaking of the legal right to the possession of property pending litigation, we do not refer to the ultimate legal right. It often happens that the later right resides in a person different from the one who is vested with the former right. Property about which this litigation is pending must remain during the progress of the case, and before judgment, either in the possession of one of the parties to the suit, or in the hands of a third person. Whoever this may be, under the law, he is the one who is legally entitled to the temporary control of the property; and if he be the defendant, and is defeated, he may secure by a stay pending the appeal a restoration and continuation of this legal right to hold the property, which will not cease until the final decision on such appeal. But to obtain a restoration of this right lost by the judgment, and a continuation of it until the appeal is decided, he must have been vested with it before judgment. Now, it is evident that the appellants, before judgment, in The Eclipse case, were not vested with any legal right to hold possession of the property, as against the one who was vested with that right by the law, *i. e.* the marshal. The marshal might have seized the vessel at any time before judgment. The stay of proceedings did not divest him of that right and confer it on the appellants, for this would be to render the bare stay effectual to enlarge their legal rights, and not merely to revive and prolong them. If the stay of execution did not, under the statute, give the appellants such right, it was not a case in which the bond required by section 416 was necessary. They were not required by that section to give a supersedeas bond to secure a stay, unless they would thereby secure the right

to retain possession of the property *pendente lite*. The authorities fully sustain this proposition under identical statutes. *In re Schedel's Estate*, (Cal.) 10 Pac. 334; *Pennie* v. *Superior Court*, (Cal.) 26 Pac. 617; *Born* v. *Hortsmann*, (Cal.) 22 Pac. 169. See, also, *McCallion* v. *Society*, (Cal.) 33. Pac. 329. I am therefore of opinion that the admiralty judgment does not fall within section 416. If, then, we are to accept the theory of both parties to this case that the territorial statutes, and not the practice in courts of admiralty, governed the procedure on appeal to the Territorial Supreme Court, the undertaking was in my judgment void as a statutory undertaking. It is conceded by counsel for plaintiff in this action that, if such judgment did not fall within section 416, there was no necessity, under the statutes, for the giving of a supersedeas bond to secure a stay of execution, but that the giving of the cost bond would, under section 422, have operated as a stay. For the reason stated I think that the case did not fall within section 416. Therefore, as no bond other than a cost bond was required to secure a stay, the undertaking sued on is void as a statutory undertaking, so far as it relates to anything more than the costs on appeal. There was no consideration for it. The parties on whose behalf it was given derived no benefit from it. *Powers* v. *Crane*, (Cal.) 7 Pac. 135; *Powers* v. *Chabot*, (Cal.) 28 Pac. 1070; *McCallion* v. *Society*, (Cal.) 33 Pac. 329; *Post* v. *Doremus*, 60 N. Y. 371; *Freeman* v. *Hill*, (Kan. Sup.) 25 Pac. 870. Said the court in *Powers* v. *Crane*, (Cal.) 7 Pac. 135: "On behalf of the sureties, who are the real parties in interest here, it is claimed that the undertaking, except in so far as the three hundred dollars is concerned, was without consideration and void. The pretended consideration, therefore, was a stay of execution of the judgment appealed from. And if the law itself operated a stay upon the giving of the three hundred dollar bond, it would seem that the point is well taken. That the statute did so operate was held by this court in the case of *Snow* v. *Holmes*, 64 Cal. 232, 30 Pac. 806. As the statute

itself wrought the stay, there was no consideration for the sureties' promise."

If we were to be governed by the territorial statutes referred to, we would be of opinion that the undertaking was void, for the reason that under such statutes the libelants were entitled to a stay of execution on giving the mere cost bond specified in section 422. But, despite the agreement of counsel, we cannot accede to their view that these statutes in any manner controlled the appeal in the admiralty case to the Territorial Supreme Court. There are only two theories on which it can be held that the territorial statutes regulated the procedure on appeal in the admiralty case. One is that by the terms of section 1910, Rev. St. U. S., the procedure applicable to actions at law in the territorial courts was made applicable to actions in admiralty; and the other is that the territorial legislature had in fact regulated the procedure in admiralty cases on appeal. That section 1910 did not assume to regulate the practice on appeal to the Territorial Supreme Court of Dakota Territory in admiralty cases, at all, is apparent from its language. It merely declared that in such cases, among others, writs of error and appeals might be taken as in other cases. It gave the right to appeal, but did not attempt to establish the procedure on such appeal. On this point the decisions of the Supreme Court of Washington Territory and of the Supreme Court of the United States are express authorities in support of our view. Section 1911 of the Revised Statutes of the United States, which was applicable to the Territory of Washington, contains precisely the same provisions as section 1910. The Supreme Court of that territory held in the case of *The City of Panama*, 1 Wash. T. 615, that the territorial statutes did not govern the procedure on appeal to that court from a judgment of the Territorial District Court in an admiralty case, but that on such an appeal the case must be tried *de novo* in the Supreme Court, and that on such trial new evidence in that court might be received. On appeal to the Federal Supreme Court the judgment, of the Territorial Supreme

Court was affirmed; and that the Federal Supreme Court must have passed upon this question, and settled it in accordance with the ruling of the Territorial Supreme Court, is evident from the fact that it appears from the report of the case that one of the assignments of error in the Federal Supreme Court related specifically to this point. It is in the following language: "The court erred in holding that the acts of congress and the rules of the Supreme Court of the United States governing the Circuit and District Courts of the United States in admiralty practice were in force in the courts of the territory, and regulated the practice therein." There was no statute in force in the Territory of Washington, giving the appellant in admiralty cases either a right to a new trial on appeal to the Territorial Supreme Court, or a right to introduce new evidence in such court. Had the Territorial and Federal Courts regarded section 1911 (which is the same as section 1910, which related to Dakota Territory) as, *ex proprio vigore*, making the practice in the Territorial Supreme Court in ordinary civil actions on appeal applicable to admiralty cases, the decisions in both courts would have been different. See, also, the opinion of Grier, J., in *Nickels* v. *Griffin*, 1 Wash. T. 374, 394, 395. In the case of *Zephyr* v. *Brown*, 2 Wash. T. 44, 3 Pac. 186, it was held that the territorial statutes regulating the practice in taking an appeal to the Territorial Supreme Court were not applicable to an appeal in an admiralty case, but that the steps necessary to perfect such appeal must be such as were recognized by the usages and practice of courts of admiralty. It is true that the Supreme Court of the Territory of Dakota, when The Eclipse case was before it, held that the territorial statutes regulated the proceedings on appeal; but no such question was before the Federal Supreme Court in that case, and the point was not settled either way by that tribunal. We are unable to agree with the decision of the Territorial Supreme Court in this particular. Undoubtedly, the legislature of Dakota Territory might have regulated the practice in admiralty cases on appeal, but it did not do so. It is obvious that the statutes of the

territory did not in any manner regulate the practice in admiralty cases in the District Court. There was no statute which related to a single step in such cases, from the filing of the libel to the rendering of final decree. The whole scope of these statutes is limited to actions at law and in equity. This was the view of the counsel on both sides in The Eclipse case, when it was before the Territorial District Court. The procedure there was in accordance, not with the territorial statutes, but with the practice in courts of admiralty. If the territorial statutes did not relate to the proceedings in the District Court, they certainly could not govern the proceedings on appeal to the Supreme Court. The territorial statutes regulated only such proceedings on appeal as were governed by the same body of territorial law when pending in the District Court They did not purport to relate to any case tried in the District Court in a manner unknown to the statutes of the territory. The statutes of the Territory of Washington were fully as applicable to admiralty cases as were the statutes of Dakota Territory; and yet the Territorial Supreme Court of Washington, in the two case already cited, held that there was no legislation in that territory regulating the practice on appeal to that court in admiralty cases. The practice in admiralty courts has always been so different from that in common-law courts that rules of procedure governing the practice in the latter courts are unsuited to admiralty courts; and nothing short of a very decisive expression of such purpose should warrant us in assuming that the territorial legislature intended to introduce such an anomaly into admiralty practice as the complete assimilation of all procedure in admiralty cases to the procedure in common-law courts. Were this done where the same courts that administered relief in common-law cases already possessed admiralty jurisdiction, also, as in the Territory of Dakota, nothing would have been left of admiralty, in the territory, but the name. We do not believe that the subject of admiralty procedure was ever considered by the territorial legislature with a view to regulating it, but in the light of the fact that the practice in admiralty courts was reason-

ably settled, and that the main features of that practice were so different from common-law procedure, it is a natural inference, which the silence of the statutes themselves significantly confirms, that the territorial legislature intended to leave undisturbed a practice whose boundaries were established, and which could not be regulated without either the framing of a special system of procedure adapted to admiralty cases, or the introduction of an anomaly into admiralty procedure,—the assimilation of the practice in such cases to the practice in common-law courts. Considering that the volume of admiralty litigation in the Territory of Dakota would necessarily be small, in comparison with the number of cases at law and in equity; that the territorial condition would cease before that volume would much increase; that the practice in admiralty was reasonably well defined; and that whatever statutory procedure was adopted would be substantially a codification of the existing practice,—the members of the legislative body would naturally leave the subject untouched by legislation. We would expect them to pursue just such a course, and the silence of the statutes on the subject renders it certain that the policy of leaving admiralty practice unaffected by territorial statute is the very one they adopted. It is therefore apparent that libelants and interveners had no absolute statutory right to a stay of proceedings pending their appeal to the Territorial Supreme Court, in giving a mere cost bond. This right they could derive only from section 422, which we hold to be inapplicable. To what authority, then, must we look to discover the rules of procedure which regulated the practice in appealing The Eclipse case to the Territorial Supreme Court? Not to any statute of the United States regulating the practice in admiralty in the Federal Courts, for it is well settled that territorial courts, although invested by statute with some of the jurisdiction of the Federal Courts, are not Federal Courts, within the scope of legislative or constitutional provisions relating to Federal Courts. They are merely territorial courts, which are for the time invested with some of the jurisdiction conferred upon the federal tribunals.

*Reynolds* v. *U. S.*, 98 U. S. 145; *American Ins. Co.* v. *356 Bales of Cotton*, 1 Pet. 511; *Benner* v. *Porter*, 9 How. 235; *Clinton* v. *Englebrecht*, 13 Wall. 434; *Hornbuckle* v. *Toombs*, 18 Wall. 648; *U. S.* v. *Bisel*, (Mont.) 19 Pac. 251. For the same reason it is obvious that the rules of practice established by the Federal Supreme Court under the act of congress were not applicable. Such rules are in terms limited in their application to courts of the United States. They were adopted and published by that court as rules of practice "for .the courts of the United States" in admiralty cases on the instance side of the court. See Ben. Adm. 381. Moreover, the statute under which that court derived its power to act in adopting these rules limited the court, in framing such rules, to regulating the practice to be used in suits of admiralty by the "Circuit and District Courts;" thus specifically referring to the Federal Courts, and excluding all other tribunals in which admiralty jurisdiction might thereafter be vested. Rev. St. U. S. § 917. The decisions of the Supreme Court of Washington Territory and of the United States Supreme Court in the cases already cited are in harmony with our views in this respect. At the time these cases were decided, the rules in question had already been in force; and yet they were not regarded as controlling, but, on the contrary, the courts went back to the old usages, rules, and practice of admiralty courts, to ascertain the correct procedure in those cases. *The City of Panama*, 1 Wash. T. 615; *The Zephyr* v. *Brown*, 2 Wash. T. 44, 3 Pac. 186. See, also, Conk. Adm. 404, 405. When we turn to the old admiralty practice, we find that the appellants, in order to perfect an appeal, were required to give new security for the full value of the property in controversy, or for the full amount in litigation. Dunl. Adm. Prac. 322; 2 Browne, Civ. and Adm. Law, 437.

Certainly, there was no settled rule of practice which would have entitled the appellants in The Eclipse case to a stay of proceedings, and even to appeal at all, without giving such a bond as the court might direct. There being no inflexible rule on the subject, the District Court of the territory in which The Eclipse

case was decided might, in allowing the prayer of the libelants that an appeal be allowed, prescribe such terms as to security, as in the judgment of the court might seem meet under the circumstances. *Otis* v. *The Rio Grande*, 1 Woods, 596, Fed. Cas. No. 10,614. Under the settled practice in admiralty, the court must allow the appeal, to confer jurisdiction on the appellate court. The appeal must not only be prayed, but also allowed. *The Zephyr* v. *Brown*, 2 Wash. T. 44-47, 3 Pac. 186; *U. S.* v. *Haynes*, 2 McLean, 155, Fed. Cas. No. 15,335; 2 Conk. Adm. 405. Said the court in the case of *The Zephyr* v. *Brown*: "However, upon searching other books, we gather that no appellate court will assume jurisdiction until it is first satisfied that an appeal has been allowed by the judge of the court below. The allowance seems to have been invariably requisite both in ecclesiastical and admiralty cases." It is true that the Territorial District Court could not have arbitrarily refused to allow the appeal. *The New England*, 3 Sumn. 495, Fed. Cas. No. 10,151. But that court might certainly have required, as a condition of allowing the appeal, that the libelants give security for more than the mere costs. Indeed, it appears from several of the cases that the appellant, on appeal to the United States Circuit Court in admiralty cases, gave a bond as for a stay of proceedings, in addition to a mere cost bond, and such bonds were treated as valid. In the case of *The Wanata*, 95 U. S. 600, it appears that a bond on appeal to the Circuit Court, to prosecute such appeal with effect, was given, although a stipulation for value had been given. The same was done in *Dutcher* v. *Woodhull*, Fed. Cas. No. 4,204. In the case of *The Blanche Page, Id.*, 1,524, it appears that a similar bond to secure the whole claim was given on appeal to the Circuit Court, notwithstanding the fact that a stipulation for value, good in the appellate court as well as the District Court, had been executed. In all of these cases the bonds were treated as valid, and in two of them judgment was rendered against the sureties therein. The Wanata and The Blanche Page. Indeed, the court, in the case of *The Brantford City*, 32 Fed. 324, treated the whole matter of fixing the bond on

appeal as within the discretion of the trial court; and, in refusing in that case to require a bond for the full amount of the claim, the court was influenced by the consideration that, in the light of the later decisions of the Federal Supreme Court, the court considered that the rule of that district, when construed in view of the change in the rulings of the Supreme Court, should be held not to require full security on appeal. But the court in that very case did require an additional bond for $7,000. Nor do we think that the fact that legally the *res* was in the custody of the court made it the absolute duty of the trial court, in The Eclipse case, to allow the appeal on the giving of a mere cost bond. It is by no means certain that, where a court has a discretion to require security as a condition of staying execution, such court ought invariably to refuse to exact security in addition to a cost bond, even in cases where the *res* is in the actual possession of an officer of the court. Such possession does not afford absolute security to the respondent, who has been successful, and who is, according to the judgment, entitled to the *res*. Courts can hold property only through the instrumentality of some officer, and such officer may be faithless to his trust, and he and his bondsmen may become insolvent, or his bond may be exhausted by others, who first proceed against it. Capt. Braithwaite would have had a right either to enforce his judgment after an appeal by the libelants accompanied by only a cost bond, or at least to move to require the appellants to give additional security to entitle them to a stay. By abstaining from the exercise of this legal right, he suffered detriment; and the appellants, in the same measure, were benefited. But the case is a much stronger one for him. If on such motion the appellants had insisted that they were in possession of the *res*, and desired and intended, if possible, to remain in possession thereof pending the appeal; that it was their wish to have the judgment regarded as practically, although not legally, a judgment against them for the delivery of this vessel to the respondent in the appeal, so that by stay of the execution of such judgment they could secure a right to retain possession pending

the appeal; and if the respondent on such appeal had acquiesced in all this; had assented that a stay of execution, on proper security, should have the effect to leave appellants in possession of the property,—is it not clear that under such circumstances the trial judge would have required the appellants to give a supersedeas bond, in addition to a mere cost bond, as a condition of securing such a stay? It appears from the record that the appellants, in giving the bond in question, took precisely this position. They were in possession of the steamer. They prepared and executed an undertaking in which they recited that the respondent in the appeal had recovered a judgment against them for her possession. It is averred that they gave this undertaking to secure a stay of execution on such judgment. Had not the respondent a perfect right to rely on this position taken by them, and derive from it, through their voluntary action, the same advantage which he might have secured on motion, had they, on such motion, taken the same position? Well might he thus reason with himself: "This position taken by the appellants with respect to the nature of the judgment appealed from, and their right to retain possession of the steamer pending the appeal, on securing a stay of proceedings, would, if acquiesced in by me, undoubtedly impel the court to require security in addition to a mere cost bond. But there is no necessity for my urging this matter before the court, for lo! here is just such a bond as the court might, under these circumstances, require,—executed without any order from the court." That the respondent knew of this undertaking is undisputed. That he refrained from all efforts to enforce the judgment, and from all attempts to disturb the appellants in their possession pending the appeal, is also uncontroverted. The only natural inference is that his conduct in this regard was influenced by the giving of this undertaking. This furnishes a sufficient consideration to sustain the undertaking as a common-law obligation. *George* v. *Bischoff*, 68 Ill. 236, and cases hereafter cited. Nor can it be said that the sureties would not be bound, in such a case, because they had not signed the undertak-

ing to be used as a means of enabling the appellants to retain possession pending the appeal, but only to secure for them such rights as a stay of proceedings would entitle them to, which would not include the right on their part to hold the vessel until the appeal had been decided. By the recital in their own instrument, they describe the judgment appealed from as such a judgment that, if the description were true, the stay of the enforcement thereof would give the appellants the right to hold the property during the pendency of the appeal. They recite that it is a judgment which the respondent has recovered against the appellants for the possession of the steamer, or, in other words, that it is a judgment which requires them to deliver the possession thereof to respondent. The stay of such a judgment would leave the appellants in possession. Now, it is true that no such a judgment was in fact rendered. But the sureties treated it as such a judgment, and therefore they justified the respondent in assuming that they signed to this undertaking to the end that the appellants might secure the right to hold the property pending the appeal. We have no doubt as to this being the object sought to be accomplished by the giving of this undertaking. The respondent, therefore, in seeking to hold the sureties responsible on the theory that this undertaking was given by them and accepted by him for this specific purpose, is merely taking them at their own word, as evinced by the very language of the instrument itself. Indeed, there is authority for the proposition that the recital would estop them from showing that the judgment was different in character. *George* v. *Bischoff,* 68 Ill. 236; *Pratt* v. *Gilbert,* (Utah) 29 Pac. 965; *Gudtner* v. *Kilpatrick,* (Neb.) 15 N. W. 708; *Adams* v. *Thompson,* (Neb.) 26 N. W. 316; 2 Am. & Eng. Enc. Law, 464. But we do not care to place our ruling on that ground. This doctrine of estoppel by recital has its limitations, and we should hesitate long before holding it applicable in a case like this. The bond appears to have been given in view of the practical situation, of which it is evident the sureties had knowledge, or could easily have obtained knowledge, *i. e.* the possession of

the vessel by the appellants. On the records of the case in the paper preceding the judgment, and on which it rested, was a finding that a portion of the appellants were in possession of the boat. Still, notwithstanding this fact, the sureties, if the territorial statutes were applicable, would have the right to insist that the undertaking was intended as the statutory undertaking in such cases, and could not be used to accomplish any other purpose. But, the moment we conclude that these statutes were not applicable, then the sureties, being presumed to know the law, are not in position to urge that they merely intended to give a statutory bond, there being no statute regulating the matter; but, on the other hand, we are to discover their purpose from all the circumstances surrounding the transaction, the instrument itself being silent on the subject. We do not, however, need to rest the case on this reasoning, as clearly both the sureties and the appellants gave the undertaking to secure at least a stay, and this stay the appellants actually obtained; the property never having been delivered to the respondent under the judgment at all, either while the appeal was pending, or after it had been formally disposed of.

It is urged that the respondent could not have been compelled to refrain from enforcing his judgment pending the appeal, but we are decidedly of the opinion that he would have been promptly restrained, upon motion, it being shown that this bond had been given to secure him. But it would not be decisive of the question, if we should hold that he need not have abstained from proceeding under the judgment pending the appeal. The fact is that he did so abstain. This is sufficient. Said the court in *Wing* v. *Rogers*, 138 N. Y. 361, 34 N. E. 194: "When an action is brought against sureties on a bond or undertaking given in an action or upon appeal, the validity and force of the instrument depend upon its efficacy in performing the office or accomplishing the end or result contemplated by the parties at the time it was given." To same effect, *Carter* v. *Hodge*, (Super. Buff.) 27 N. Y. Supp. 219; *Hathaway* v. *Davis*, 33 Cal. 161; *Gardner* v. *Don-*

*nelly*, 86 Cal. 367, 24 Pac. 1072; *Hanna* v. *Savage*, (Wash.) 36 Pac. 269; *Healey* v. *Newton*, (Mich.) 55 N. W. 666; *Moffat* v. *Greenawalt*, (Cal.) 27 Pac. 296; *Buchanan* v. *Milligan*, (Ind.) 25 N. E. 349; *Hester* v. *Keith*, 1 Ala. 316. Judge Elliot, in his work on Appellate Procedure, says: "Weight is attached,—justly, as we believe,—by the better-considered cases, to the fact that the bond has yielded the principal obligor beneficial consideration." Section 357. See, also, 1 Enc. Pl. & Prac. 1019. Supersedeas bonds on appeal to the Circuit Court in admiralty actions have been given in many cases where the claim was already secured, and yet it has never been intimated that such bonds were without consideration and void. So far as appears from the cases, they were given voluntarily. On principle, such a bond must be valid, unless the obligors can show that the appellants obtained nothing under the bond except what they were entitled to without it. That the appellants did obtain something else, we are clear, for it is our opinion that they had no absolute right to stay of execution of the judgment awarding possession to the respondent on the execution of a mere cost bond; and we are also clear that they obtained the privilege of retaining possession pending the appeal, and that the sureties signed it that they might retain such possession. Where an appellant, who does not become entitled to a stay, as a matter of right, by the doing of a particular act, voluntarily gives an undertaking for the purpose of securing a stay, which in its effect, is substantially the same as that which the court might have required as a condition of allowing a stay, the appellant, and those who signed the instrument with him for the purpose of his obtaining such stay, cannot, after it has accomplished its purpose, assail it for want of consideration, because the court did not order it to be given, or because it may not be precisely such an undertaking as the court would have required. The bond is good as a common-law bond. *Pray* v. *Wasdell*, 146 Mass. 324-328, 16 N. E. 266; *George* v. *Bischoff*, 68 Ill. 236; *Meserve* v. *Clark*, 115 Ill. 580, 4 N. E. 770. Indeed, this is the

rule even in those cases where the statute prescribes what kind of a bond will stay execution, and the appellant gives a different one, and the respondent treats it as a sufficient stay bond. *Association* v. *Read*, (N. Y. App.) 26 N. E. 347; *Wing* v. *Rogers*, 138 N. Y. 361, 34 N. E. 194; *Goodwin* v. *Bunzl*, 102 N. Y. 224, 6 N. E. 399. See, also, *Granger* v. *Parker*, 142 Mass. 186, 7 N. E. 785. Nor can the sureties complain because the bond is upheld as a good common-law bond. It must have been evident to them that it was designed to subserve some other purpose than the mere securing of costs on the appeal. On the theory that it was only a cost bond, it was enormously excessive in amount, and it contains provisions which on that hypothesis are utterly meaningless. In view of the law that the appellants had no absolute right to secure a stay on the giving of a mere cost bond, the sureties were chargeable with knowledge, from the language of the bond and the amount of the penalty, that it was executed to secure a stay, or at least that the respondent might so treat it, and thus be induced to refrain from enforcing his judgment pending the appeal.

Counsel for defendants now takes up his stand at the last barrier, save one, against his clients' liability, left him, and asserts that the District Court did not in fact render a judgment against the libelants and interveners for the delivery by them of this property to the claimant, that when this judgment was affirmed its character was not changed in the least, and that, therefore, there has been no breach of the undertaking on appeal, as this refers to only such a judgment as the appellants must perform. It is on his construction of the undertaking that we differ from him. His two other propositions are clearly sound. The language of the undertaking is that the obligors undertake to obey any order made in the case by the appellate court. This does not mean merely any order requiring something to be done by the promisors, for no order of that kind could be made, as against such of the promisors as were sureties. The language is broad enough to cover any order which might be made in the case,

whatever its character. The parties signing the undertaking, in legal effect, guarantied that such order would be obeyed, and that if it were not obeyed they would save the respondent from loss. This interpretation accords with the plain significance of the language of the instrument; and it is reasonable that we should so construe the contract as to make it a security for the obedience by the marshal of the order of the court, when we consider the fact that the judgment appealed from was directed against him, and not against the parties, and that on affirmance of such judgment the only order of the Supreme Court to be obeyed, as the sureties must have well known, would be an order binding the marshal, and not the appellants, to deliver this property to the respondent. Unless we are prepared to say that the parties, in signing this undertaking, did not intend to bind themselves at all, except for costs, we must give it this construction. It is an elementary rule of construction that a contract must be so construed as to make it valid and efficacious, rather than invalid or inefficacious. Unless they were guarantying the performance by the marshal of the judgment on affirmance, they were, by all this language, really imposing no liability on themselves at all. Said the court in a very similar case: "We must attribute to the obligors the intention to enter into an obligation every provision of which would be valid." *Shreffler* v. *Nadelhoffer*, 133 Ill. 555, 25 N. E. 630. See, also, *McElroy* v. *Mumford*, 128 N. Y. 307, 28 N. E. 502; 1 Enc. Pl. and Prac. 1011. We hold that the undertaking is supported by a sufficient consideration, and that the affirmance of the judgment, followed by the failure of the marshal and the appellants to deliver the steamer Eclipse to the plaintiff herein, constituted a breach thereof. The complaint therefore states a good cause of action for damages, unless there is force in the next point to be considered.

This brings us to the question whether the failure of the court to fix the amount of this bond as a supersedeas bond renders it void. Having held that the territorial statutes do not apply, but that the bond is good as a common-law bond, this question is not

important. But, even if the case were governed by the statute, the instrument would be good. Section 416 provides that, in cases where a bond is given thereunder, the court or judge shall fix the amount thereof. This provision is obviously for the protection and benefit of the respondent on the appeal. He may waive compliance with it. If he is willing to accept as a stay bond a bond in the penalty of a certain sum, no one has any reason to ccmplain. When the sureties sign it as a stay bond, and the respondent accepts it as such, what has the court to do in the premises? Under such circumstances, the court, if appealed to, would fix the amount of the bond at the sum agreed on by the parties. There is ample authority for the view that the respondent may waive a compliance with such a provision. *Hill* v. *Burke*, 62 N. Y. 111; *Irwin* v. *Crook*, (Colo. Sup.) 28 Pac. 549; *Bennett* v. *Mulry*, (Super. N. Y.) 26 N. Y. Supp. 790; *Scherer* v. *Hopkins*, (Com. Pl.) 16 N. Y. Supp. 863; *Coleman* v. *Bean*, 1 Abb. Dec. 394; *McCracken* v. *Todd*, 1 Kan. 348; *Skellinger* v. *Yendes*, 12 Wend. 308; *Shaw* v. *Tobias*, 3 N. Y. 188; *Wolcott* v. *Mead*, 12 Metc. (Mass.) 517; *Ducher* v. *Judson*, 16 N. Y. 439; 1 Enc. Pl. and Prac. 1007, cases in note 3. It is a necessary inference from the allegations of the complaint that the respondent on that appeal waived all objections to the bond because the court had not fixed the amount thereof. It alleges that the bond was given to secure a stay, and that it was served on respondent's attorney. It shows on its face that it is a stay bond. It must have been treated by respondent as such, for the complaint alleges that the possession of the boat has never been restored to him. In *Post* v. *Doremus*, 60 N. Y. 371, the party did not waive the omission to have the amount of the bond fixed, for the reason that it did not purport to be a stay bond, and the court took the view that the respondent accepted it only as a cost bond. In that case the bond could not operate as a stay without an express order of court to that effect. Here no order granting a stay was necessary. All the court was required to do, assuming that the statute applies, was to fix the amount of the bond. A waiver of this act by the

respondent made the bond effective to stay the proceedings. The acceptance of a bond in the Post Case did not make such bond operate as a stay; for an order granting a stay was, as we have said, indispensable. It was on an appeal from an order granting a new trial that the bond in that case was given, and the court held that in such a case nothing would stay the proceedings except an order of court; citing *McMahon* v. *Allen*, 22 How. Prac. 193, where the judge who wrote the opinion said: "I conclude, therefore, that the only way in which, in such a case as this, the proceedings in the court below can be stayed after an order for a new trial has been made, is by a motion directly for that purpose in this court." As the respondent on the appeal in the admiralty case saw fit to accept and act on this bond as a sufficient stay bond, without the amount thereof being fixed by the court, the obligors therein are in no position to interpose the objection that the bond is void because the amount thereof was not so fixed.

The plaintiff successfully vindicated his right to the possession of the steamer Eclipse through the entire course of the action in admiralty; obtaining a judgment in the District Court, which was affirmed by the Supreme Court of the territory, and finally by the Supreme Court of the United States. The justice of the case is palpably with him. All parties have regarded this bond as taking the place of the vessel,—as his security in lieu of his obtaining possession of her under the judgment appealed from. It is a source of great satisfaction to the court that we are able, under the law to recognize and uphold the justice of his claim. The order of the District Court is reversed, and the trial court is directed to enter an order overruling the demurrer. All concur.

BARTHOLOMEW, J. (concurring.) I concur in the foregoing opinion, but also deem it proper to go one step further than my Brother Corliss has gone. Assuming that the territorial statutes were controlling in the matter of giving the undertaking on appeal from the original judgment in admiralty, I then think that the undertaking sued upon should be sustained as a statutory

undertaking given to stay execution upon a judgment for the delivery of personal property. True, the judgment was not such in form, but the facts found show that it was such in its practical effect, and all the parties to the litigation so treated it. I am authorized by the chief justice to say that he concurs in this view, also.

### ON APPLICATION FOR REHEARING.

CORLISS, J. On the application for rehearing, the opinion of the court has been attacked with such ability and earnestness by the counsel for defendants, who has laid under tribute, to strengthen his argument, so wide a field of juridical learning, that, despite the length of the original opinion, we feel constrained to state our reasons for not agreeing with him with respect to the new points he has presented. He seems to concede that we are correct in our view that the territorial statutes did not govern the appeal in the admiralty case. But he contends that such appeal was in all respects regulated by the statutes of the United States and the rules of the Federal Supreme Court relating to appeals from the Federal District to the Federal Circuit Court in that class of cases. The decision in *The City of Panama*, 101 U. S. 453, is cited as conclusive on this point. We do not so construe it. The court was not called on in that case to decide whether such statutes and rules governed the appeal to the Supreme Court of the Territory of Washington from the Territorial District Court, for the practice which was in fact adopted on such appeal was sanctioned by the usuages of courts of admiralty on appeal in such cases, and did not require any support from legislation or formulated rules of court. The Federal Supreme Court nowhere asserts that the acts of congress, and the rules promulgated by that court, governed the appeal to the Territorial Supreme Court, nor is there to be found in the opinion any reasoning leading up to this conclusion. There is only a faint inference that such was the decision of the court, from the language of the assignment of error which is overruled.

But that assignment would not have been changed, in its essential nature, had it stated that the court erred in holding that the general practice in admiralty, independently of legislation and formulated court rules, governed the proceedings on appeal to the Territorial Supreme Court, and in refusing to hold that the territorial statutes regulated such appeal. And the assignment, as so framed, would have more accurately pressed the proposition before the Federal Supreme Court for decision. In *Smith* v. *The Challenger*, (Wash.) 7 Pac. 851, both parties agreed that rule 16 of the Federal Supreme Court, relating to admiralty practice in the Federal Courts, was applicable to a case in territorial courts, the only difference between them being as to the construction of that rule.

But, even if we should agree with counsel that the appeal to the Territorial Supreme Court in the admiralty case was governed by the statutes of the United States, so far as applicable, we could not assent to his view that at the time such appeal was taken there was any federal legislation relating to appeals from Federal District to Federal Circuit Courts in admiralty cases, aside from the statute giving the right to appeal. Rev. St. § 641. As this section originally stood, it provided that such appeals should be governed by the rules, regulations, and restrictions relating to proceedings on writs of error. While the statute remained in this form, there could be little doubt about appeals to the Federal Circuit Court, in admiralty proceedings on the instance side of the court, being governed by the statutes of the United States relating to proceedings on writs of error. See *The Lottawanna*, 20 Wall. 201; *Hayford* v. *Griffith*, Fed. Cas. No. 6,263. Mr. Conkling bases his criticism of Justice Story's ruling to the contrary on that language of the statute which had been dropped therefrom before the appeal to the Supreme Court of the Territory of Dakota was taken in The Eclipse case. 2 Conk. Adm. 385 *et seq.* Under the statute as it then stood, the authorities cited, which construed the statute as it originally was framed, are not in point. There is, however, a single decision in favor of the

counsel's contention. It is *Insurance Co.* v. *Wager*, 37 Fed. 59. The reasoning of Judge Wallace does not convince us that he is right. He admits that his construction does violence to the language of the statutes relating to the subject. He finds his strongest—and practically his only—argument to justify his wresting of the words of the statutes in question from their obvious meeting in the circumstance that congress had, in express terms, exempted the government from the necessity of giving security on appeal to the Circuit Court in admiralty as well as in other cases. The inference he draws from this provison, that it indicates that congress considered that the government was not entitled to such an exemption as a matter of right, is a very natural inference. But his further deduction that, therefore, congress must, by prior legislation, have imposed on the government, as well as on others, the duty of giving security on such appeals, is not necessarily sound. The obligation to give security on appeal was, as we shall show later, recognized by courts of admiralty long before the federal government was established. It is just as logical a conclusion that congress had this practice in view, in framing the provision exempting the government from the performance of this obligation, as that it had in view a statutory enactment on the subject. Nay, the former conclusion is much more reasonable than the latter, when we examine the terms of the statutes from which the purpose to regulate proceedings on appeal to the Federal Circuit Court in admiralty cases is, by Judge Wallace, extorted by a process of construction which does violence to the language in which these acts are couched. Section 1012 of the Revised Statutes of the United States is, to our minds, a significant provision, and it seems to us to be hostile to the views of Judge Wallace. It, in terms, declares that the rules, regulations, and restrictions applicable to cases taken to a higher court on writs of error shall govern appeals in admiralty cases in only prize cases. Cases on the instance side of the court are not mentioned. In *The Brantford City*, 32 Fed. 324, Judge Brown held that there was no federal statute regulating the

matter of security on appeals to the Circuit Court in admiralty cases, and this decision we regard as sound. It is not pretended that there was any rule of the Federal Supreme Court, at the time The Eclipse case was appealed, which regulated the matter of security on appeals to the Circuit Court in admiralty cases. Our conclusion, is that neither the territorial statutes, nor the acts of congress, nor the rules of the Federal Supreme Court, governed the question of security on .appeal to the Territorial Supreme Court in The Eclipse case. We also hold that, even if the statutes and rules which governed appeals to the Federal Circuit Court in such cases applied to the appeal in question, still there was no statute or rule regulating this matter on appeals to the Federal Circuit Court.

But conceding all this to be true, counsel for defendants still contends that, on the assumption that general rules of admiralty practice regulated the appeal in question, the instrument sued on is void so far as it provides that the obligors shall obey any order which the court might make in the premises. We fully agree with him that if the appellants in that appeal had an absolute legal right to secure a stay of proceedings by appealing, without incorporating in the bond that condition, then that portion of the bond is without consideration and void, unless other circumstances, to be referred to later, take the case out of the general rule laid down and applied. *Kountze* v. *Hotel Co.*, 107 U. S. 378, 2 Sup. Ct. 911. In this connection we must express our dissent from the proposition that writs of error and appeals operated of themselves, at common-law, absolutely to stay execution. Counsel for defendants insists that no authority to require security as a condition of allowing a stay is ever vested in any court without a statute to that effect, and that, as we hold that there is no statute relating to this matter in admiralty cases, the bond was a nullity. This is not a correct statement of the law. There has always inhered in courts of law, courts of equity, and courts exercising admiralty jurisdiction, power to require security to be given as a condition of staying execution. It is

true that at common-law a writ of error operated in the first instance as a supersedeas. But the court to which the writ of error was issued had power, in its discretion, to allow the successful party to enforce his judgment despite the issuance of the writ and the same power was vested in the tribunal by which the writ was issued. *Messonnier* v. *Kauman*, 3 Johns. Ch. 66; *Bradwell* v. *Weeks*, 1 Johns. Ch. 325; *Brewster* v. *Cowen*, (·Conn.·) 10 Atl. 509-511; *Allen* v. *Hopper*, 24 N. J. Law, 514, 515; *Entwistle* v. *Shepherd*, 2 Term R. 78; *Kempland* v. *Macauley*, 4 Term R. 436. This power to permit execution to be issued notwithstanding the issuance of a writ of error necessarily included the lesser power to require the appellant to give security to obtain a stay until final decision by the Supreme Court. The statutes in England referred to by Mr. Justice Bradley in *Kountze* v. *Hotel Co.*, *supra* were passed to give the respondent an absolute right to that which at common-law he could only pray for as a favor to be granted or withheld in the discretion of the court. When we turn to appeals in equity cases, we find that except during the struggle of the house of lords to maintain its jurisdiction to review cases in chancery on appeal, when the rights of litigants were lost sight of in the strife for power, an appeal has never, of itself, been sufficient to entitle the appellant to a stay of proceedings pending the appeal. So long as the jurisdiction of the house of lords was challenged, that body deemed every step taken in the case, however slight, as a denial of its authority; and accordingly it arbitrarily held that nothing could be done in the lower court after appeal, however foreign it might be to the branch of the case which was carried up. As soon as its jurisdiction was generally recognized, it began to abate, its now no longer ambition inspired pretensions, and in 1772 it was held that the stay did not extend beyond that portion of the case which was removed to the house of lords by the appeal. Finally, in 1807, it declared, by resolutions, that even this doctrine, which had its origin in bitter contentions for judicial power, in which the interests of the suitor were lost sight of, had for a long time

previous thereto ceased to be followed, but that, on the contrary, an appeal, of itself, did not operate as a stay,—the appellant being required to apply to the chancellor to secure a stay, who could refuse it or allow it on such terms as he might prescribe. The action of the chancellor in this regard seems to have been subject to the supervision of the appellate court. *Hart* v. *Albany*, 3 Paige, 381; *Messonnier* v. *Kauman*, 3 Johns. Ch. 66; *Burke* v. *Brown*, 15 Ves. 184, note; *Willan* v. *Willan*, 16 Ves. 216; *Way* v. *Foy*, 18 Ves. 452; *Monkhouse* v. *Corporation of Bedford*, 17 Ves. 380; 2 Daniell, Ch. Prac. 1467. Except as changed by statute, this has been the law in England for upwards of a century. In this country some of the courts have followed the English practice, while others have held that an appeal in an equity case stays, in the first instance, the order or decree appealed from, but that the chancellor or the appellate court may allow the successful litigant to enforce the decree or order despite the appeal. *Messonnier* v. *Kauman*, 3 Johns. Ch. 66; *Riggs* v. *Murray*, 3 Johns. Ch. 160; *Bradwell* v. *Weeks*, 1 Johns. Ch. 325; *Green* v. *Winter*, 1 Johns. Ch. 77; *Hart* v. *Albany*, 3 Paige, 381; *Schenck* v. *Conover*, 13 N. J. Eq. 31; *Riehle* v. *Heulings*, 38 N. J. Eq. 83; *Peer* v. *Cookerow*, 14 N. J. Eq. 361-365; *Kimball* v. *Alcorn*, 45 Miss. 149; *Cook* v. *Dickerson*, 1 Duer, 691. This power to permit the successful suitor to enforce the decree pending an appeal includes the lesser power of requiring the appellant to give security, as a condition of withholding execution while the appeal is pending. In several of the English cases the appellant was required to pay into court the money which the decree adjudged that he must pay, to be invested for the benefit of the person finally adjudged entitled to it. *Willan* v. *Willan*, 16 Ves. 216; *Monkhouse* v. *Corporation of Bedford*, 17 Ves. 380. This was ordered to be done in *Riggs* v. *Murray*, 3 Johns. Ch. 160, also. It cannot be questioned that in these cases the court could have required a bond, instead of the payment of the money into court. Indeed, in *Riggs* v. *Murray* the appellant was given an option to furnish security, instead of

bringing the money into court. See, also, *Cook* v. *Dickerson*, 1 Duer, 691.

With respect to appeals in admiralty cases, counsel contends that there is, in the absence of some statutory change in the practice, no such thing as a stay of proceedings, for the reason that the appeal, of itself, annuls the decree appealed from, thus leaving nothing to be enforced pending the appeal. Undoubtedly, it has been many times asserted by the courts that the case is to be heard *de novo* on the appeal,—as though no decree had been rendered. And in some of the cases even stronger language is used. *Yeaton* v. *U. S.*, 5 Cranch, 281; *The Collector*, 6 Wheat. 194; *U. S.* v. *Preston*, 3 Pet. 57; *The Lucille*, 19 Wall. 73; *Penhallow* v. *Doane*, 3 Dall. 54. But as was said by Judge Benedict in *Dutcher* v. *Woodhull*, Fed. Cas. No. 4,204, there was no question before the court as to the right of the respondent to enforce a decree after appeal, no security having been given. In this case Judge Benedict intimates it to be his opinion that, despite an appeal, the decree would stand unaffected for the purpose of enforcing it pending the appeal, should no security be given. "In determining this case, it is not necessary to say whether, under some circumstances, a decree in admiralty, made by the District Court, cannot remain of effect after an appeal is taken to the Circuit Court. It would seem that such may be the case where an appeal is taken, but no bond for damages on appeal is given. Under such circumstances, the failure of the appellant to give a bond for damages would seem to change the aspect of the case, and render it thereafter a proceeding to obtain a decree of restitution, and the numerous cases heretofore determined, both in the Circuit Court and the Supreme Court of the United States, do not appear to me to furnish authority for determining that, after an appeal without security for damages on the appeal, no effect whatever can be given to the decision of the District Court. The general language of these decisions can only be understood by referring to the position of the cases then under consideration, which were not cases of appeal without security." That an

appeal did not, of itself, prevent an enforcement of a decree in admiralty, and that for that purpose it would be regarded as a subsisting decree, would seem to follow from the language of Clerke, Praxis Adm.: "If the party against whom sentence was passed shall have appealed at the time of delivering the sentence, and a term have been assigned for prosecuting the same, and a certificate of the prosecution of the same, and in the *interim* the judge has not been prohibited from further proceedings, the proctor who obtained the sentence ought to pray that the adverse party should be called upon to show cause why sentence of execution should not be ordered, and the costs be taxed." (How could the court proceed, if the appeal, of itself, annulled the judgment?) Title 61. See Page 110 of Hall's Practice and Jurisdiction of Courts of Admiralty, where this title is found translated. In this country stay bonds have been given, and their necessity, as a condition precedent to a supersedeas, have been recognized in many cases. Some of these cases are referred to in the original opinion. In our view, these bonds were not required to be given by any act of congress, but only by general principles of admiralty practice. If an appeal annulled the judgment, why was it necessary in these cases to give a stay bond to prevent the enforcement of the judgment, which, on this theory, was swept away by the appeal. But whether an appeal in admiralty cases left the decree standing for the purpose of enforcement, and security had to be given to obtain a stay, or whether the appeal was not perfected so as to annul the decree until proper security had been given, is not very important, for it cannot be denied that on appeal in admiralty cases the appellant was required to give security. "If the plaintiff in the first instance shall appeal, he is not allowed to file a libel until he has put in fide-jussory security to prosecute the cause, to pay the costs, to submit to the judgment, and to confirm the acts of his proctor." Clerke, Praxis Adm. Tit. 59. See, also, Brown, Civ. and Adm. Law, 437; Dunl. Adm. Prac. 322; *The Brantford City*, 32 Fed. 324-326.

We agree with counsel for defendants that the plaintiff or

libelant, when he was the appellant, was ordinarily not required to give security to pay or obey any judgment which might be rendered in the case, because, as a rule, he was not in possession of anything belonging to his antagonist which could be awarded him by the decree of the court. Generally speaking, the utmost extent of his liability under the English practice was for costs, and his stipulation for costs covered this liability. But the situation of the parties in the Eclipse case, at the time the appeal was taken, was peculiar. The vessel was in the actual possession of the appellants, and this fact appeared upon the face of the record in the case. The appellants desired to retain such possession pending the appeal. The sureties must be deemed to have knowledge of the fact that appellants were in possession, for it was part of the record in the case in which the bond was given. And they must also be regarded as being cognizant of the object of the appellants in giving such bond, for its recitals as to the nature of the judgment appealed from, if true, show that it was such a judgment that a stay of execution on it would leave the appellants in possession of the property pending the appeal. The sureties were therefore plainly apprised of the purpose of the appellants to secure by means of that bond the right to remain possession of the boat pending the appeal; and the large penalty named in the bond was another circumstance which made it obvious that the bond was given to enable the appellants to hold the vessel until final decision on appeal, thus leaving very valuable property which the decree awarded to the claimant in their hands at his risk, making it necessary that he should be secured. The bond was in the nature of a stipulation for value. But counsel for defendants urges that it cannot be regarded as having been given for any such purpose, for the reason that the complaint, in terms, avers that it was given to stay execution. But this allegation of the complaint must be construed in the light of the other facts set forth in that pleading; and, when so interpreted, it is manifest that it is an averment of the ultimate purpose for which the bond was given, namely, to enable the

appellants to retain possession of the vessel pending the appeal. To give a bond to stay execution of a judgment which those giving it construe as a judgment requiring the appellants to deliver property, of which they had actual possession, to their successful adversary, is, in its ultimate analysis, to give a bond to enable such appellants to hold possession of such property pending the appeal. We are therefore clear that the sureties executed this bond with full knowledge that it would be used by the appellants for the purpose of enabling them to keep possession of the vessel. When so used by them with the tacit acquiescene of the respondents, it became a valid obligation; having served the purpose which all the obligors intended it should serve. Whether the libelant in a possessory action is ever entitled to possession on giving a stipulation for value, or whether he may secure possession in this way after decree in favor of the claimant, even assuming that he may do so before final judgment, it is not necessary to inquire. 23 Am. and Eng. Enc. Law, 576· No statute or rule of law declares the bond in question void; and therefore, even though the claimant was not bound to allow the libelants to retain possession after the giving of this bond, still, as he did in fact permit them to remain in possession on the strength of the bond, the bond is valid in all its provisions, as a common-law bond, for the reasons set forth in the original opinion, Nor do we, by reaching the conclusion that the bond was in the nature of a stipulation for value, bring the case within the rules stated in the main opinion,—that exclusive cognizance of proceedings to enforce stipulations for value is vested in the Federal Court sitting as admiralty courts. The reasons for that rule do not apply to stipulations for value given in possessory actions. They are not substitutes for the original *res*, but are mere securities. Nor is it true that the only judgment which can be enforced according to its terms in a possessory action, where a stipulation for value has been given, is a judgment against the stipulators for value. Judgment is rendered for the delivery of possession to the successful party,

and is enforced according to its terms, even if the property is in the possession of the defeated suitor. Were this not so, the right to maintain a possessory action in admiralty would, in most cases, be illusory. If the claimant, by giving a stipulation for value, could defeat the right of the libelant to recover possession of his property, the word of promise of the admiralty law that possession of property might be recovered in admiralty courts would be kept only to the ear, and broken to the hope. On principle, it must be the rule that in possessory actions the original *res* can be seized under the judgment, and delivered to the successful suitor. *The John*, 2 Hagg. Adm. 305-317; *The Elize*, 2 Spinks, 34; *The Gran Para*, 10 Wheat. 497. A stipulation for value, in such an action, is therefore not a substituted *res*, but in the nature of security for the property, as in replevin actions. The court can render a judgment for the delivery of the *res*, which it will enforce according to its terms. Therefore the reasons for the rule that exclusive jurisdiction of proceedings to enforce stipulations for value is vested in the court in which it was given do not apply to stipulations given in possessory actions, and it follows that they may be enforced in other tribunals.

Finally, it is said that there has been no breach of the condition of the bond to obey any order the appellate court might make, for the reason that no order requiring anything to be done has in fact ever been made by that court. It is urged that a judgment of affirmance is not; either in terms or in legal effect, an order requiring the delivery of the vessel to the claimant. In this connection the case of *The Lucille*, 19 Wall. 73, is cited. This merely holds that a judgment of affirmance in the Circuit Court is not a final judgment from which an appeal will lie to the Federal Supreme Court. The ground of this decision is that the Circuit Court should render an entirely new judgment, for the reason that the amount of the judgment should not be left to be ascertained by an examination of the records of another court. But in The Eclipse case it was not necessary to examine the records of the District Court to ascertain just what the judgment of the

Supreme Court was. The original decree, or a copy of it, was among the records of the Supreme Court in the case, and that showed that the vessel was to be delivered to the claimant. By construing the judgment of affirmance in the light of the original decree, it would appear that the Supreme Court also had ordered that the vessel be delivered to the claimant. All this would be shown by the records of the Supreme Court. It would not be necessary to look to any other record to determine the exact nature of the judgment of that court. While, perhaps, for the purposes of an appeal, the judgment of affirmance might not have been sufficient to sustain an appeal, it was a sufficient order of the Supreme Court for the delivery of the vessel to constitute a breach of the bond. Indeed, the Federal Supreme Court took jurisdiction of the case on appeal from such judgment, and have thus treated it as a sufficient final judgment in the case. *The Eclipse*, 135 U. S. 599, 10 Sup. Ct. 873. How a new judgment could now be entered, after an affirmance of this judgment by the Federal Supreme Court, we are unable to see; and, if counsel's contention be sound, there could never be any recovery in this case, because the judgment of the Territorial Supreme Court did not, in terms, order that the vessel be delivered to the claimant, although, in legal effect, it was just such a judgment.

The application for a rehearing is denied.

WALLIN, J. I concur in the foregoing opinion, in so far as it denies the application for a rehearing.

(65 N. W. Rep., 701.)

NOTE BY G. W. NEWTON—The foregoing decision records only one turn in the litigation that has arisen from the ownership and doings of the steamboat "Eclipse." It is the aim of this note to epitomize briefly, the many points of law that have been mooted and decided in such litigation.

1. The jurisdiction of admiralty does not extend to the execution of a trust. The title of a steamboat being in trustees, the beneficiaries may terminate the trust, and obtain a decree of sale upon a proper proceeding in a court of equity. *Rea, et al v.* *Steamboat "Eclipse,"* 4 Dak. 218, S. C. 30, N. W. 159. Creditors and interveners, in order to wind up a trust, and enforce a contract of sale of a vessel, can not resort to a court of admiralty. A court of admiralty has not the characteristic powers of a court of equity in such case. *Rea, et al v. The Steamer "Eclipse,"* Wm. Braith-

waite, claimant, U. S. Sup. Ct. Rep. L. Ed. B. 34, p. 269; S. C. *The Eclipse*, Rep. Ed. p. 599.

2. When a part owner is master, and in possession of a boat, under an agreement in writing, he is not subject to removal by his co-owners. *Rea, et. al.* v. *Steamboat "Eclipse,"* 4 Dak. 218, S. C. 30 N. W. 159. The owner of one-half of the legal title of a steamboat, who is the master in possession, and who is by written agreement entitled to such possession at master, is not liable to removal from his position as master. *Rea, et al* v. *The Steamer "Eclipse,"* Wm. Braithwaite, claimant, U. S. Sup. Ct. Rep. L. Ed. B. 34, p. 269; S. C. *The Eclipse*, Rep. Ed. p. 599.

3. The Supreme Court of the United States is limited, in reviewing judgments and decrees in admiralty cases, to a determination of the questions of law arising upon the record, and to such rulings of the court, excepted to at the time, as are presented by the bill of exceptions. *Id.*

4. Where the title to a boat is placed in two persons, as trustees, to be held by them as part owners, and for co-owners, until payment to the co-owners, of certain sums, representing the amount of their interests, and upon such payments the trust to terminate, and title absolute to vest in such trustees, the transaction is at most, a creation of a lien in the nature of a mortgage, and the trustees are the legal owners of the boat. Under such circumstances, a bill of sale executed by a part of the co-owners, would pass to the purchaser no title beyond the equitable interests of such co-owners, as beneficiaries of the trust. *Rea, et al* v. *Steamboat "Eclipse,"* 4 Dak. 218, S. C. 30, N. W. 159.

5. Where the transcript of record upon an appeal from the District to the Supreme Court of the Territory of Dakota, in an admiralty case, contains evidence and extraneous matter, not made a part of the bill of exceptions, such evidence and extraneous matter should, by motion, be stricken from the record. Appeals in admiralty cases, from the District to the Supreme Court, are governed by the same statutes and rules that obtain in other civil actions tried to the court. *Rea, et al* v. *Steamboat "Eclipse,"* 4 Dak. 218, S. C. 30 N. W. 159.

7. The District Court, of the State of North Dakota, is the successor of the Territorial District Court, and has jurisdiction to render judgments in actions pending in such territorial court, at the time of the admission of the state into the Federal Union; although the verdict was rendered before such admission. *Braithwaite* v. *Power, et al*, 1 N. D. 455, S. C. 48 N. W. 354.

8. Where the master of a vessel, who had agreed for a stipulated price, to transport goods upon the Missouri river, was interrupted by the closing of navigation, and the consignees forcibly took the goods from him, the master being able and willing to complete the transportation, to earn his freight, can recover full freight. No time for delivery being specified in the contract of affreightment, the master could rightfully have held the goods until the opening of navigation, that he might earn his freight by completing the transportation. *Braithwaite* v. *Power, et al*, 1 N. D. 455, S. C. 48 N. W. 354.

9. The master of a vessel who has entered into a contract of affreightment, in his own name as master, may maintain an action upon such contract as the trustee of an express trust, under § 4872, Comp. Laws of Dakota Territory. *Braithwaite* v. *Power, et al*, 1 N. D. 455, S. C. 48 N. W. 354.

10. Where the owners of three steamboats operated them jointly for their own benefit, under the name "Benton Line," they are all liable as partners, or joint traders on a contract of affreightment, made by their authorized agent in such name,

to carry goods in place of one of such boats; and it seems that by operating such boats jointly, in such manner for two seasons, the owners would have rendered themselves liable as partners, or joint traders, even though they had not been such in fact. *Braithwaite* v. *Powers, et al,* 1 N. D. 455, S. C. 48 N. W. 354.

11. Where one of three defendants dies, *pendente lite,* and his administrator is substituted, and voluntarily appears and defends the action, and no objection is raised by any of the defendants to such course until after trial and verdict, the Supreme Court will not, on an appeal by the surviving defendants, reverse the judgment against all of them when it provides that the judgment against the administrator shall be paid only in due course of administration. Nor can defendants raise the point that a judgment against them should have been in favor of the plaintiff alone, and not in favor of plaintiff and interveners, as that is a matter exclusively between the plaintiff and intervenors. *Braithwaite* v. *Power, et al,* 1 N. D. 455, S. C. 48 N. W. 354.

12. Where the complaint in intervention is framed on the theory only, of co-operation by the interveners with the plaintiff, in the effort to secure judgment against defendants, and the prayer for relief merely requests payment of the money into the hands of a person to be designated by the court, no claim in the complaint, or on the trial being made that the rights of the plantiff and the interveners, as between themselves, are to be adjusted in the action; and the verdict is a joint verdict in favor of the plaintiff and interveners, for the amount of the recovery, it is error to award to interveners any specific portion of the money, without first having adjusted the equities between the plaintiff and the intervenors. *Braithwaite* v. *Aikin, et al,* 1 N. D. 475, S. C. 48 N. W. 361.

13. To warrant the granting of a new trial, on the ground of newly discovered evidence, the affidavits must show such new facts as will probably lead to a different result on a new trial. Applications for a new trial on this ground, are looked upon without disfavor and distrust. Such facts must be established by the affidavits of persons who are personally familiar with them, and it is not sufficient to set forth that another will testify to these facts, or some of them. The affidavit of such person, showing what he personally knows about them, must be produced; unless some strong reason is shown why this requirement should be dispensed with. Although the trial court has a large discretion in awarding or refusing new trials, which will not be interfered with except in case of abuse, yet, when a new trial is granted, upon a particular ground, there must be some legal evidence that such cause for a new trial exists; and the ground must be a legal ground for granting a new trial. *Braithwaite* v. *Aikin, et al,* 2 N. D. 57, S. C. 49 N. W. 419.

14. The plaintiff and interveners recovered judgment against the defendants, for certain earnings of the steamboat "Eclipse," while the plaintiff was operating her under the agreement for her purchase, set out in *Braithwaite* v. *Aikin,* 1 N. D. 475, S. C. 48 N. W. 361; and the interveners, by their complaint in intervention, claimed the money due under the judgment, as money to which they were entitled under the agreement. *Held,* that the plaintiff (defendant in intervention) could not set up as a counterclaim, a cause of action for the conversion of his interest in the steamboat, referred to in such contract; that the cause of action for the tort did not arise out of the contract or transaction set forth in the intervention complaint, as the foundation of the intervener's claim, and is not connected with the subject of the action. Also, that the cause of action for tort could not be sustained as an equitable set-off, independent of statute, there being no averment that the interveners are insolvent, and that the mere fact that they are not residents of the state does not warrant

the application of the doctrine of equitable set-off; and also, that equity would not allow the set-off of a cause of action for an independent tort, against a claim arising on contract, even if the interveners were insolvent. *Braithwaite* v. *Aikin, et al*, 3 N. D. 365, S. C. 56, N. W. 133. One whose property has been converted, may waive the tort, and sue for the benefits received by the wrong-doers; although he has not disposed of the property converted, but the intent to waive the tort must appear on the face of the pleading. *Id.* One who intervenes in an action, subjects himself as fully to the jurisdiction of the court as if he had brought an original action against the person against whom his complaint in intervention is filed; and the defendant in intervention may recover an affirmative judgment against the intervener, either because of matters growing out of the intervener's claim, or by establishing a counterclaim, the same as a defendant in an ordinary action. *Id.*

15. A judgment against an administrator in one state, has no binding force or effect against another administrator of the same estate in another state; and such judgment need not be pleaded in an action on the same account, against another administrator, in another state, in order to show that the demand sued on, had been given credit for the amount realized under the foreign judgment. *Braithwaite* v. *Harvey, Adm'r*, 14 Mont. 208, S. C. 27, L. R. A. 101, S. C. 36 Pac. Rep. 38. An administrator will not become bound by the judgment by assisting in the defense of a suit against another administrator of the same estate, in another state. *Id.*

16. A statement in a letter that "whatever is due is ready whenever I can safely pay you or" a third person named is not a sufficient new promise to take the claim out of the statute of limitations. *Braithwaite* v. *Harvey, Adm'r*, 14 Mont. 208, S C. 27 L. R. A. 101, S. C. 36 Pac. Rep. 38. Striking a paragraph from a complaint, on motion, is not reversible error, if it was not sufficient to authorize a recovery. *Id.*