**THOMAS PRODUCING COMPANY, a co-partnership composed of William R. Thomas, Edward Renshaw Thomas and Shirley E. Thomas, Plaintiff,**

**v.**

**PAN AMERICAN PETROLEUM CORPO-RATION and Seaboard Surety Company, a corporation, Defendants.**

**Civ. No. 534.**

United States District Court
D. North Dakota,
Southwestern Division.

May 25, 1964.

Russell R. Mather, of Fleck, Smith, Mather & Strutz, Bismarck, N. D., for plaintiff.

William R. Pearce, of Cox, Pearce, Engebretson, Murray & Anderson, Bismarck, N. D., for defendants.

RONALD N. DAVIES, District Judge.

The facts leading up to the controversy in the above-entitled matter are not in dispute and may be briefly summarized. Thomas Producing Company filed an application with the Industrial Commission of the State of North Dakota seeking an exception to the prescribed spacing pattern in connection with drilling a test well for oil and gas

in the "Black Slough Field," Burke County, North Dakota.

In compliance with the request of Thomas Producing, a hearing was conducted before an Examiner appointed for that purpose by the Commission pursuant to Section 38–08–04.1, NDCC, on January 22nd, 1963. Based upon the testimony and exhibits in that hearing and the recommendations of the Examiner, the Commission issued its order, No. 610, on February 5, 1963, approving Thomas Producing Company's application and granting the drilling exception.

Several days later Defendant, Pan American Petroleum Corporation, filed with the Commission a "Notice of Appeal and Application for New Hearing in Case No. 567, Order 610" and requested the suspension of the order pending a hearing *de novo* before the Commission. On February 12, 1963, the Commission set the hearing *de novo* for March 15, 1963, but conditioned the suspension of Order No. 610 on the filing by Pan American of a supersedeas bond with appropriate surety in the sum of $15,000.00 within ten days. The bond was to run in favor of the Commission for the use and benefit of any person who might suffer damage by reason of the suspension in the event Order No. 610 was affirmed. Without making any objection or without protesting the Commission's requirement of a bond, Pan American Petroleum on February 22, 1963, filed a supersedeas bond with itself as principal and the Defendant, Seaboard Surety Company, as surety. Under the terms of the Commission's order of February 12, the filing of the bond automatically suspended Order No. 610, and the Plaintiff ceased drilling operations. After the hearing on March 5, 1963, the Commission entered its Order No. 617 affirming and restoring Order No. 610.

Alleging that it suffered damages because it ceased drilling operations as a result of the suspension of Order No. 610, Thomas Producing Company commenced this action against Pan American and its surety on the bond, Seaboard.

The answer filed by the Defendants contains a general denial and a prayer for dismissal of the complaint, alleging that it does not state a cause of action because "it was not within the power of the Industrial Commission of the State of North Dakota to impose an obligation upon Pan American Petroleum Corporation to be responsible to Plaintiffs in this action for damages of any kind or nature or for any extra expenses which Plaintiffs might have incurred in drilling operations, and that said bond is neither provided for nor required by any of the statutes of the State of North Dakota nor of the Rules and Regulations adopted by the North Dakota Industrial Commission."

A brief résumé of the applicable statutes and Commission Rules and Regulations is necessary before discussion of the Defendants' contention. The Industrial Commission has jurisdiction to regulate the spacing of wells,[1] Section 38–08–04 (2) (a), and to grant an exception thereto, Section 38–08–07(3). Before 1961 anyone adversely affected by an order of the Commission could either appeal directly to the District Court of Burleigh County or request a rehearing and, if the order was affirmed, then appeal to the District Court, Section 38–08–14(1). On appeal to the District Court in either event, if an application for the suspension of the order was filed with the Commission, that body entered an order fixing the amount of the supersedeas bond. If the required bond was filed, the Commission then suspended the order complained of until its final disposition on appeal. If the order was not suspended, it continued in the same force and effect as if no appeal had been taken, Section 38–08–14(2).

In 1961 another step was added to the procedure by granting the Commission the right to use hearing examiners under such rules and regulations as they might prescribe, Section 38–08–04.1. Pursuant

1. All Section references are to the North Dakota Century Code, Chapter 38-08.

to this Section, the Commission promulgated Rule 1109 [2] which provides that the Commission may refer any matter or proceeding to any legally designated and appointed examiner; Rule 1114 which provides that after receipt of the report and recommendations of the examiner, the Commission shall enter its order disposing of the matter or proceeding; and Rule 1115 which provides that any party adversely affected by such order shall have the right to have such matter or proceeding *de novo* before the Commission, and any person affected by the order of the Commission after the hearing may apply for a rehearing.

It will be noted that neither the statutes nor the prescribed Rules and Regulations of the Commission provide for the suspension of a Commission order pending a hearing *de novo* or a rehearing, and it follows that no provision exists for the fixing of a supersedeas bond upon application for such a suspension. Although it may well be that the Industrial Commission could prescribe such a rule or regulation, it has not done so and the Commission was without authority to require Pan American Petroleum Corporation to file a supersedeas bond, *but it was also without authority to grant the suspension.* The question then presents itself whether a bond given for a lawful purpose, although not legally required, is binding. The Court feels the answer to that question must be in the affirmative, the general rule being that where a bond is executed voluntarily and upon valid consideration and is not in violation of public policy nor forbidden by law, it is binding as a common law obligation. Fidelity & Deposit Company of Maryland v. State of Montana, 9 Cir., 92 F.2d 693; Nesvold v. Thompson, 56 N.D. 385, 217 N.W. 516; Braithwaite v. Jordan, 5 N.D. 196, 65 N.W. 701, 31 L.R.A. 238.

The Commission attached no conditions to the granting of the *de novo* hearing but only to the suspension of Order No. 610. It was for this purpose that

2. All Rule references are to the General Rules and Regulations for the Conservation of Crude Oil and Natural Gas of

the supersedeas bond was filed and since no objection was made to the Commission's conditioning of the order of suspension on the filing of the bond and since the bond was not filed under protest, the Defendant, Pan American Petroleum Corporation, cannot now be heard to contend that the bond was not voluntary. Pan American sought and was granted suspension of the order which resulted in the Plaintiff ceasing its drilling operations. This is sufficient consideration for the the giving of the bond. For the reasons cited the Court finds that the Complaint in the above-entitled action does state a justiciable cause of action, and

It is ordered that the prayer of the Defendants for dismissal of the Complaint herein must be, and it is hereby denied.

the Industrial Commission of North Dakota.